UNITED STATES of America for the Use and Benefit of GULFPORT PIPING COMPANY, Appellee,

v.

MONACO AND SON, INC., and Hartford Accident and Indemnity Company, Appellants.

No. 9272.

United States Court of Appeals Fourth Circuit.

Argued April 14, 1964.

Decided Sept. 17, 1964.

Charles C. Hartman, Jr., Annapolis, Md. (Kahl K. Spriggs, Ellis, Houghton & Ellis, Washington, D. C., and Fell & Hartman, Annapolis, Md., on brief), for appellants.

Dan H. Shell, Jackson, Miss. (Kenneth G. Perry, Jackson, Miss., and R. Carleton Sharretts, Jr., Baltimore, Md., on brief), for appellee.

Before HAYNSWORTH and BRYAN, Circuit Judges, and BUTZNER, District Judge.

HAYNSWORTH, Circuit Judge:

The District Court allowed this claim under the Miller Act holding that the intermediary, between the use plaintiff and the general contractor, was a subcontractor rather than a material supplier, and that there was no agency relationship between the use plaintiff and the intermediary and no basis for an estoppel against assertion of the claim. We think the claim must fail under the doctrine of equitable estoppel.'

Monaco and Son, Inc., a general contractor [1] was awarded a contract for the construction and installation of a steam distribution system for Andrews Air Force Base in Maryland. For the purpose of its bid, it used a quotation it had obtained from Durant Insulated Pipe Company, Inc. for furnishing necessary underground conduit, with accessories and fittings, complying with the contract's specifications. After the award was made, Monaco issued a purchase order to Durant for those materials. Durant in turn issued its purchase order to Associated Piping and Engineering Company, Inc., a manufacturer having a plant in Gulfport, Mississippi. Associated supplied some of the material, but, prior to shipment of the major portion of the material, sold all of its fixed assets to the use plaintiff, Gulfport Piping Company, and assigned to Gulfport Associated's rights under Durant's purchase order.

The major portion of the underground conduit, its accessories and fittings, were shipped by Gulfport in March and April 1960 directly to the job site at Andrews Air Force Base. When Gulfport did not receive payment from Durant it gave notice to Monaco in accordance with the requirements of the Miller Act. Meanwhile, however, Monaco had paid Durant. The Miller Act notice from Gulfport was the first knowledge Monaco had that Gulfport rather than Durant was the manufacturer.

■■ We need not here consider the details of all of the contracts and their performance which are set forth at length in the opinion of the District Court,[2] for we find it unnecessary to consider the principal point involved in the case below. Since we find an estoppel to assert the claim, we do not review the District Court's conclusion that Durant was a subcontractor rather than a materials supplier.[3] What we say, therefore, should not be taken as approval or disapproval of the District Court's opinion on that point.

It is plain, however, as the District Court found, that Monaco and the United States considered Durant to be a materials supplier and not a subcontractor. Under the general contract, Monaco was required to submit for approval of the United States the names of all of the subcontractors. Monaco did submit the names of two subcontractors, to which small portions of the work had been subcontracted, but it did not submit the name of Durant because it regarded Durant as a supplier of material. For the same reason, Durant's payrolls were not submitted to the United States, as would have been required if Durant was a subcontractor. Durant's name was submitted as a supplier, however, with its brochure, shop drawings and test reports. It long had been in the business of manufacturing and supplying such material and its products were known to meet the requirement of "standard" products which the general contract stipulated. The Government contracting officer also regarded Durant as a supplier rather than a subcontractor.

Instead of manufacturing the material, itself, however, Durant turned to Associated, with which it had entered into at least a tentative arrangement pursuant to which Durant would sell and Associated would manufacture material of the sort which Durant had earlier manufactured. The agreement provided for a division of profits and losses. Associated had not previously produced that kind of material and probably could not have qualified under the requirements of the general contract as a supplier. The tentative arrangement between Durant and

1. Its surety was joined as a defendant, but the record indicates that Monaco is financially responsible and is the real party in interest.

2. 222 F.Supp. 175.

3. The Miller Act, of course, does not protect a supplier to a supplier. It does protect a supplier to a subcontractor. Clifford F. MacEvoy Co. v. United States for Use and Benefit of Calvin Tomkins Co., 322 U.S. 102, 64 S.Ct. 890, 88 L. Ed. 1163.

Associated had been made earlier than this transaction, however, and, apparently, contemplated many sales by Durant and was not made in anticipation of this specific order.

There was a difference between the parties as to whether or not Durant and Associated actually operated under the letter-agreement which was offered in evidence. The District Judge found that they did not. There seems clearly to have been an expectation in advance, however, that Durant would procure such orders as this for the account of Associated, Durant's role being to produce the business, prepare what shop drawings were required, or some of them, and furnish inspection services on the job site, while the fabrication of the material and its shipment were to be entirely in the hands of Associated.

The work was thus divided between Durant and Associated in this instance and, when Associated sold its assets to Gulfport, Gulfport continued as Associated had before.

Since Durant, itself, had been a fabricator and manufacturer of such materials, Monaco dealt with it as such, and Durant actively concealed the fact of its new arrangement. On its letterhead and otherwise, it declared that it had a factory at Gulfport, Mississippi, though it had no installation in Mississippi unless the Associated-Gulfport plant be regarded as its or one represented by it. Associated-Gulfport knew of this representation because it appeared on Durant's letterhead, on which the purchase order in this very case was written. All bills of lading, freight bills and packing tickets prepared by Gulfport in Gulfport, Mississippi, showed Durant to be the shipper. Some of these showed Durant's address to be the same as Gulfport's. These documents were all received by Monaco, confirming its impression that Durant was the manufacturer. The District Court thus found that Durant had falsely represented itself to be the manufacturer and fabricator, and that Gulfport, at least, knew of and acquiesced in the misrepresentation.

The District Court held, however, that the misrepresentation was not the cause of Monaco's loss. It did so upon reasoning that since Monaco regarded Durant as a supplier rather than a subcontractor, it would have paid Durant in any event. The premise of the reasoning does not justify the conclusion.

It is clear that Monaco did regard Durant as a supplier. It consistently treated it as such, but it did so upon the assumption, as represented to it, that Durant was the fabricator and producer of the material. Had it known what the true facts were, its conduct must have been quite different.

In the first place, it would not have submitted Durant's materials for approval. It would have submitted other materials representative of Associated-Gulfport's products, and it is, at least, doubtful that such other materials could have passed the standard products requirements of the contract's specifications in the light of Associated's inexperience in the manufacture of underground conduit. And when the time for payment came, it would have looked upon Durant as a very different entity than the one it thought it saw.

Had Monaco known the true facts, it would have recognized that Durant was acting only as a broker, manufacturer's representative, sales agent, joint venturer, or something similar, but far different from the producer-supplier Monaco thought Durant to be. There is no basis whatever upon this record for the assumption that Monaco would regard a manufacturer's agent or a broker as a supplier to whom payment could safely be made without fear that the manufacturer-producer would assert a claim protected by the Miller Act. The most obvious assumption, had the true facts been known, was that Gulfport was a direct supplier to Monaco, and, because direct, protected under the Miller Act. That would have been entirely consistent with Monaco's treatment of Durant as a direct supplier. Durant's true role was so completely unlike what Monaco supposed it was that the premise that

Monaco, accepting the false supposition, treated Durant as a supplier, lends no support to a conclusion that it would have treated Durant, rather than Associated, as the supplier had it known what the true facts were.

There was direct testimony by a Monaco official that, had the true facts been known, he would have paid neither Gulfport nor Durant until attorneys had been consulted and their advice obtained. There is no basis in the record for an inference that Monaco would have acted otherwise than as its official testified, for when the facts were known the only rational basis for a payment to Durant would be reliance upon the principle that payment to the agent was payment to the principal warranted by the principal's implied authorization.[4] On the basis of Monaco's justified assumptions, if it had any doubt that Durant was a supplier rather than a subcontractor, it might have been willing to run the risk of a claim by suppliers of unfabricated material and of Durant's factory employees, whose unpaid wages could hardly have been expected to run for substantially more than a week or two. With the full facts disclosed, Monaco could hardly have been expected to pay Durant, now revealed as being only an agent or something closely akin to an agent, and to run the risk of a claim for the total cost of the delivered, fabricated material ready for installation, unless it had solid ground for belief that payment to Durant would effectively discharge its total obligation. On the basis of the true facts, there was every reason to believe that payment to Durant would not effectively protect Monaco.

The District Court found that Gulfport knew of and, at least, acquiesced in Durant's misrepresentation. It thought that Gulfport's showing Durant to be the shipper on the shipping documents was not a misrepresentation, for the title to the material passed technically to Durant when the material was loaded in Gulfport. Even though that be accepted as true, however, listing Durant's address as Gulfport's on some of the shipping documents affirmatively supported Durant's misrepresentation. Gulfport joined in it and, having joined in the misrepresentation, it bears a heavy burden of showing that the harm that unquestionably resulted was not caused by the misrepresentation.

The only permissible inference on the record is that had Monaco known the true facts it would not have unquestioningly paid Durant as it did. Its payment to Durant without further inquiry was induced by the misrepresentation.

██ It is well settled, of course, that a Miller Act claimant can be foreclosed by an estoppel in pais. The Miller Act was provided for the protection of the innocent and not to create a fertile field for profit by one's own fraud or misrepresentation. The equitable principles of estoppel in pais are thus left unimpaired by the Miller Act.

█ This we have held on several occasions. When the Miller Act claimant by his own agreement or representation induces the general contractor to make payment to another, he is estopped from subsequent assertion of his claim to the extent that it is duplicating.[5]

Reversed.

---

4. We need not consider the District Court's conclusion that there was no undisclosed agency relationship between Gulfport and Durant. Unless Durant might be said to have been acting as an independent broker, there are many indicia of an agency relationship calling for application of the principle that payment to the agent discharges the claim of the undisclosed principal. However, decision on the estoppel point is enough to dispose of the case without further consideration of the agency question.

5. United States for use and Benefit of Noland v. Wood, 4 Cir., 99 F.2d 80; Kansas City Marble & Tile Co. v. Penker Const. Co., 4 Cir., 86 F.2d 287. Actually these cases arose under the Heard Act, the Miller Act's predecessor, but the principle is the same.