370 F.2d 293
 UNITED STATES of America, for the Use of Harold BRYANT, dba Rio Grande Sand and Gravel, Appellant,
v.
LEMBKE CONSTRUCTION COMPANY, Inc., and Glens Falls Insurance Company, Appellees.
 No. 8595.
 United States Court of Appeals Tenth Circuit.
 December 20, 1966.
 
 James A. Womack, Albuquerque, N. M. (Arturo G. Ortega, Albuquerque, N. M., on the brief), for appellant.
 Richard G. Cooper, Albuquerque, N. M. (Bryan G. Johnson and Marshall G. Martin, Albuquerque, N. M., on the brief), for appellees.
 Before MURRAH, Chief Judge, and HILL and HICKEY, Circuit Judges.
 HILL, Circuit Judge.
 
 
 1
 This Miller Act case was brought in the United States District Court by the use plaintiff-appellant against appellees Lembke Construction Company, Inc., a prime contractor on a government construction contract, and its surety, Glens Falls Insurance Company. The District Court rendered judgment for the appellees.
 
 
 2
 Appellee Lembke Construction Company contracted to construct certain facilities for the United States Government. As required by the Miller Act,[1] a payment bonding agreement was entered into — the bonding company being appellee Glens Falls Insurance Company. Subsequently, Adams Concrete Company entered into a contract with Lembke to supply all of the concrete necessary for the construction job. Appellant Harold Bryant, dba Rio Grande Sand and Gravel, then entered into an oral agreement with Adams whereby appellant agreed to supply Adams with sand and gravel needed in mixing the concrete for the government project. Appellant did perform under this agreement and it is not controverted that Adams owes appellant $2,390.00 for sand and gravel delivered. Appellant, after complying with § 270b(a)'s notice requirement, as use plaintiff, instituted suit under the Miller Act against the prime contractor, Lembke Construction Company, and its bonding company, Glens Falls Insurance Company, to recover on the payment bond the amount due appellant from Adams. The District Court found that appellant could not recover on the bond because Adams was not a "subcontractor" within the meaning of 40 U.S.C. § 270b(a).[2]
 
 
 3
 Since appellant Bryant had no contractual relationship with the prime contractor, appellee Lembke, Bryant cannot recover on the payment bond unless he can show that Adams was a "subcontractor" within the meaning of the statute. Thus, we have but one very narrow question to decide: Did the District Court properly conclude that Adams Concrete Company was not a "subcontractor" of the appellee Lembke Construction Company, Inc., within the meaning of the proviso in 40 U.S.C. § 270b(a)?
 
 
 4
 The Supreme Court in Clifford F. MacEvoy Co. v. United States et al., 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163, addressed itself to an interpretation of "subcontractor" as the word is used in the proviso. In that case, considering the Miller Act's history, the Court rejected a broad generic definition of the word and, instead, found that it was intended to have a "more technical meaning, as established by usage in the building trades * * *."[3] Under this construction, the Court held that "a subcontractor is one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, thus excluding ordinary laborers and materialmen." The appellee asserts that the District Court properly found that Adams was a materialman rather than a subcontractor. Appellant, however, relying on the disjunctive "or" in the language just quoted contends that a person who supplies only materials — as Adams did — can be a subcontractor if he performs for and takes from the prime contractor a "specific part of the * * * material requirements of the original contract." Since Adams contracted to and did, except for a "few bags", supply all the concrete used in the project, appellant contends he qualifies as a subcontractor.
 
 
 5
 The MacEvoy case does tell us that "The Miller Act * * * is highly remedial in nature. It is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects."[4] It also tells us, however: "But such a salutary policy does not justify ignoring plain words of limitation and imposing wholesale liability on payment bonds." We think appellant is reading the language it relies upon in isolation and is ignoring the purpose of the Miller Act and the substance of the MacEvoy case. The ultimate determination of whether a supplier of material such as Adams is a materialman or a subcontractor depends upon a consideration of the extent to which, in matters of substance, the prime contractor delegates to the supplier, and the supplier undertakes to perform for the prime contractor, a specific part of the labor or material requirements of the prime contract.[5]
 
 
 6
 In this case, Adams undertook to furnish concrete. There was by this undertaking no substantial delegation of any portion of Lembke's contract. The concrete Adams undertook to deliver was in no way a "customized" material, thus bringing Adams within the purview of those cases holding that a supplier of such "customized" material is a subcontractor, even though he does not perform many services in reference to installation.[6] All Adams did was deliver concrete. Admittedly, he was to deliver all the concrete needed for the job and the concrete had to conform to the specifications in the prime contract. This does not, however, change Adams' status from a materialman to a subcontractor. The reference in Adams' contract to the specifications in the prime contract is "merely descriptive of what is to be furnished."[7] There was no material delegation of the job the prime contractor was obligated to perform under the prime contract.
 
 
 7
 We agree with appellant that "subcontractor" must be given a judicial interpretation and that its meaning is not dependent upon how the parties designate themselves.[8] However, the Supreme Court has told us that "subcontractor" must be given a "technical meaning, as established by usage in the building trades. * * *."[9] Thus we think it significant that Adams furnished concrete under a "Standard Form of Material Contract" but when Adams contracted to prepare some road beds and parking areas for Lembke, that work was done under a "Standard Subcontract Form." The District Court found that "The Contract for materials was treated by all the parties entirely on a different basis than the subcontract."[10]
 
 
 8
 We think it would fly in the face of the "practical considerations underlying the [Miller] Act"[11] to accede to appellant's too liberal construction of the MacEvoy case. The Act does not propose to cope "with remote and undeterminable liabilities incurred by an ordinary materialman * * *."[12]
 
 
 9
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 40 U.S.C. § 270a
 
 
 [2]
 The statute has been quoted so often in other opinions, we quote only that part necessary for a determination of the question in this case:
 "* * * Provided, however, That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. * * *"
 
 
 [3]
 Clifford F. MacEvoy Co. v. United States et al., supra, 322 U.S. at 108, 64 S.Ct. at 894
 
 
 [4]
 Clifford F. MacEvoy Co. v. United States et al., supra, 322 U.S. at 107, 64 S.Ct. at 893; See Golden West Construction Company v. United States et al., 10 Cir., 304 F.2d 753 and Woods Construction Company v. Pool Construction Company, 10 Cir., 348 F.2d 687 and cases there cited
 
 
 [5]
 United States for the Use and Benefit of Gulfport Piping Company v. Monaco and Son, Inc., U.S.D.C.Md., 222 F.Supp. 175, reversed on other grounds, 4 Cir., 336 F.2d 636; and see United States for Use of Wellman Engineering Company v. MSI Corporation, 2 Cir., 350 F.2d 285
 
 
 [6]
 See United States to Use of Hardwood Products Corp. v. John A. Johnson & Sons, D.C.W.D.Pa., 137 F.Supp. 562; Basich Brothers Construction Company v. United States, 9 Cir., 159 F.2d 182; United States for Use of Wellman Engineering Company v. MSI Corporation, 2 Cir., 350 F.2d 285
 
 
 [7]
 United States for Use of Potomac Rigging Company v. Wright Contracting Company, U.S.D.C.Md., 194 F.Supp. 444, 447; Brown & Root, Inc. v. Gifford-Hill & Co., 5 Cir., 319 F.2d 65. Compare United States to Use of Hardwood Products Corp. v. John A. Johnson & Sons, D.C.W.D.Pa., 137 F.Supp. 562 and United States for Use of Wellman Engineering Company v. MSI Corporation, 2 Cir., 350 F.2d 285
 
 
 [8]
 See Clifford F. MacEvoy Co. v. United States et al., supra, 322 U.S. at 108, 64 S.Ct. 890; United States for Use of Wellman Engineering Company v. MSI Corporation, 2 Cir., 350 F.2d 285 and United States for the Use and Benefit of Gulfport Piping Company v. Monaco and Son, Inc., U.S.D.C.Md., 222 F.Supp. 175, reversed on other grounds, 4 Cir., 336 F. 2d 636
 
 
 [9]
 Clifford F. MacEvoy Co. v. United States et al., supra, 322 U.S. at 108, 64 S.Ct. at 894; see also United States for Use of Potomac Rigging Company v. Wright Contracting Company, supra
 
 
 [10]
 The District Court specifically found:
 "That the contracting industry by custom and usage in the contracting business recognizes the distinction between the Standard Form of Material Contract and the Standard Subcontract Form and the following requirements in connection therewith:
 "That under Standard Form of Material Contracts sales tax is added to the price, and that in the use of Standard Subcontract Forms the sales tax is figured in the price and not added thereto; that in the case here before the Court the contract on the Standard Form of Material Contract added the tax to the price therein contained and did not include the tax in the price set forth.
 "That under the Standard Form of Material Contract payrolls are not submitted to the prime contractor and under the Standard Subcontract Form of agreement payrolls are submitted to the prime contractor; that in the case here before the Court no payrolls were submitted to the prime contractor by the Adams Concrete Co. under the Standard Form of Material Contract.
 "That under the Standard Form of Material Contract copies of such contracts are not required to be furnished the Bureau of Indian Affairs, and under the Standard Subcontract Form copies are required to be furnished the United States Bureau of Indian Affairs; that in the case here before the Court no copies of the contract entered into on the Standard Form of Material Contract were furnished the United States Department of the Interior, Bureau of Indian Affairs.
 "That under Standard Form of Material Contract no performance bond is required, and under the Standard Subcontract Form performance bonds are required; that in the case here before the Court no performance bond was furnished by the Adams Concrete Co. under Standard Form of Material Contract but was required under Standard Subcontract Form."
 
 
 [11]
 Clifford F. MacEvoy Co. v. United States et al., supra, 322 U.S. at 110, 64 S.Ct. at 895
 
 
 [12]
 Ibid