UNITED STATES of America for the Use of WELLMAN ENGINEERING COMPANY, Appellee,

v.

MSI CORPORATION and Fullerton Construction Co., Comprising a joint venture known as Zarpas-Fullerton Joint Venture,

and

Aetna Casualty & Surety Company, Appellants.

No. 446, Docket 29519.

United States Court of Appeals Second Circuit.

Argued May 6, 1965.

Decided July 29, 1965.

Richard E. Moot, Buffalo, N. Y. (William S. Easton and Ohlin, Damon, Morey, Sawyer & Moot, Buffalo, N. Y., on the brief), for appellee.

Marvin P. Sadur, Washington, D. C. (Francis J. Pelland, and Sussholz & Sadur, Washington, D. C., Lauren D. Rachlin, of Rachlin & Rachlin, Buffalo, N. Y., on the brief), for appellants.

Before MOORE, SMITH and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

The United States District Court for the Western District of New York, John O. Henderson, Judge, entered judgment on a Miller Act (40 U.S.C. §§ 270a, 270b) bond in favor of use-plaintiff Wellman Engineering Company, and the obligor and surety on the bond appeal. Affirmed.

Appellants MSI Corporation and Fullerton Construction Co., as a joint venture known as Zarpas-Fullerton Joint Venture (Zarpas), were successful bidders on a government project for construction of a Bomarc missile site near Niagara, New York. Appellant Aetna Casualty & Surety Company is surety on Zarpas' Miller Act bond on the contract.

Appellee, Wellman Engineering Company, contracted to furnish the Seneca Industrial Machine Corporation with certain hydraulic actuator and latch mechanisms needed by Seneca as part of a hydraulic system for opening and closing massive missile launcher roofs to be installed at a missile site then under construction by Zarpas, the general contractor for the Government project. Zarpas entered into a contract with Seneca entitled "Subcontract for Supply" whereunder Seneca was to manufacture and supply at the job-site the hydraulic system for opening and closing the roofs in accordance with contract specifications, sections 52 and 53 of the prime contract, including a designated change order, at a price of $85,000. Seneca did not have contractual responsibility for nor did it have anything to do with the installation of the system.

■ After Wellman had furnished all the mechanisms in accordance with the contract specifications, Seneca defaulted on its contract with Wellman and Wellman sought recourse against Zarpas. Timely notice of non-payment was given to Zarpas in accordance with the provisions of the Miller Act, and when Zarpas and its surety, the appellant Aetna Casualty & Surety Company refused payment, Wellman instituted this suit. The District Court, in finding for Wellman, held that Seneca was a subcontractor and

that simply because Seneca did not perform any work on the job-site did not mean, as the court interpreted the Supreme Court decision in MacEvoy v. United States, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944), that Seneca must be considered a materialman. One who supplies material to a materialman is not protected by the Act. Considering the degree of responsibility assumed under Seneca's contract, the type of work involved, the type of payment, and the nature and form of the agreement between the parties, the court concluded that Seneca was a subcontractor and not a materialman and that Wellman was therefore entitled to relief under the Miller Act.

■ We think that the court was correct in looking at the total picture here. It has been held, properly, we believe, that MacEvoy does not confine the resolution of the issue to expert opinion in the trade. United States for the Use and Benefit of Gulfport, etc. v. Monaco & Sons, 222 F.Supp. 175 (D.Md.1963), reversed on other grounds 336 F.2d 636 (4 Cir. 1964). While some courts have limited the definition of subcontractors under the Act to on-site performers, others have not, and we would not so narrowly read MacEvoy. See Basich Bros. Construction Co. et al. v. United States for the Use of Turner et al., 159 F.2d 182 (9 Cir. 1946). The Miller Act was substituted for the Heard Act to provide a separate payment bond on government contracts for the protection of subcontractors and materialmen in response to complaints of undue delay in collecting on the single bond for performance and payment provided for by the Heard Act, caused by the priority given to the government rights under the performance provisions of the bond. The Congressional Committee reports did not specify that protection was confined to those working on the job-site, but indicated that the protection was not, however, to extend to an endless chain of suppliers. "A sub-subcontractor may avail himself of the protection of the bond by giving written notice to the contractor, but that

is as far as the bill goes. It is not felt that more remote relationships ought to come within the purview of the bond." House of Representatives Report No. 1263, 74th Congress, 1st Session. A subcontractor is "one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, thus excluding ordinary laborers and materialmen." 322 U.S. at 109, 64 S.Ct. at 894. Here, Seneca and Wellman for Seneca built to specifications of the prime contract, items not generally available on the open market, were under close job supervision, and received progress payments, under what was called a subcontract. Seneca itself and using Wellman's devices did perform a specific part of the requirements of the original contract. To paraphrase MacEvoy, it would have been easy for Zarpas to protect itself against loss by requiring Seneca to give security by bond, or otherwise, for the payment of those who contracted directly with Seneca. In United States to the use of Hardwood Products Corp. v. John A. Johnson & Sons, Inc. et al., 137 F.Supp. 562 (W.D.Pa.1955), doors built to contract specifications for a Veterans Administration Hospital, manufactured off-site were held to have been furnished by a subcontractor, although no on-site work was performed. See also Basich Bros. Construction Co. et al. v. U. S. for the use of Turner, et al., supra—where rock, sand and gravel was according to contract produced and delivered four and one half miles from the job-site. In the MacEvoy case the materials were apparently ordinary building materials for construction of dwelling units furnished to Miller, an ordinary materialman, not one who built to contract specifications components for the job. Mechanism built to the prime contract specifications, for the unique task of rapid movement of the heavy concrete roofs of missile launchers, qualify Seneca as "one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract

* * *." The court properly placed the case on the subcontractor side of the line drawn by the Act, rather than make the determination that Seneca was merely a materialman solely on the basis of lack of on-site work. Since Wellman had direct contractual relation with Seneca and gave the required notice to Zarpas, Wellman is covered by the bond.

The judgment is affirmed.