In the Matter of GARDEN STATE ERECTORS, INC., a corporation of the State of New Jersey, Debtor.

Philip H. SHORE, Receiver,

v.

A. LEO NASH STEEL CORPORATION, (Deft.-Third-Party Pltf.),

v.

MacDONALD BROTHERS, INC., McClinch Crane, Inc., Industrial Metal Erection, Inc., the Connecticut Valley Crane & Rigging Co., Inc., Industrial Welding Supply, Inc. of New Jersey, Trustees of Operating Engineers Local 825 Welfare & Pension Funds, Iron Workers District Council (Philadelphia and Vicinity) Welfare & Pension Plan, (Third-Party Defts.),

v.

IRON WORKERS DISTRICT COUNCIL (Philadelphia and Vicinity) Welfare & Pension Plan, Trustees of Operating Engineers Local 825 Welfare & Pension Funds, (Third-Party Deft., Counter-Claimant and Fourth-Party Pltf.),

v.

INSURANCE COMPANY OF NORTH AMERICA, (Fourth-Party Deft.),

B. J. Builder of New Jersey, Inc., (Third-Party Pltf.-Intervenor),

Industrial Metal Erection, Inc., Appellant.

No. 78–2133.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) April 30, 1979.

Decided June 11, 1979.

Evan W. Broadbelt, Kordes & Clayton, Sea Girt, N. J., for appellant Industrial Metal Erection, Inc.

Philip J. Albert, Levy, Levy, Albert & Marcus, Trenton, N. J., for appellee A. Leo Nash Steel Corp.

John E. Adams, Jr., Markowitz & Zindler, Trenton, N. J., for appellee Trustees of Operating Engineers Local 825 Welfare & Pension Funds.

Harold M. Cohen, Kleinberg, Moroney, Masterson & Schachter, Millburn, N. J., for appellee Philip H. Shore, Receiver.

Before ADAMS, GIBBONS and WEIS, Circuit Judges.

OPINION OF THE COURT

PER CURIAM.

This case raises the question whether a third-tier subcontractor is entitled to payment under Section 2(a) of the Miller Act, 40 U.S.C. § 270b(a) (1976), as a party "hav-

ing direct contractual relationship with a subcontractor."[1]

B. J. Builders of New Jersey, Inc., entered into a contract with the United States for construction of a post office. The contract provided for a payment bond which is required under the terms of the Miller Act. Appellee, A. Leo Nash Steel Corp., was selected by B. J. Builders, the contractor, to serve as the primary subcontractor for the project. Nash in turn subcontracted part of its work to Garden State Erectors, Inc., and Garden State then subcontracted with appellant, Industrial Metal Erection, Inc. (Industrial), for the installation of metal decking for the roof and floor of the post office.

While work was progressing on the project, Garden State filed a petition in the district court under Chapter XI of the Bankruptcy Act. Thereafter, the receiver for Garden State filed a complaint against Nash in the bankruptcy court to recover sums owed for services provided by Garden State under its subcontract with Nash. Because it began to receive claims from companies alleging to have performed work for Garden State, Nash responded by joining these claimants, including appellant Industrial, as third-party defendants. The entire proceeding was transferred from the bankruptcy court to the district court for an adjudication of the contentions asserted by Garden State's subcontractors.

The district court struck the claims of the third-party defendants, remanded the case to the bankruptcy court, but retained jurisdiction over Industrial's counterclaim against Nash. After a hearing on Industrial's counterclaim, the trial judge ruled that there was no direct contractual relationship between Nash and Industrial,[2] and that consequently Industrial's counterclaim did not state a cause of action against Nash under the Miller Act. Industrial filed a timely appeal to this Court.

Section 1(a)(2) of the Miller Act[3] requires that a government contractor, where the amount of the contract exceeds $2,000, furnish the United States a payment bond "for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of such person." Section 2(a) of the Miller Act further directs that persons furnishing such labor or material may bring suit on the payment bond if they have not been paid in full within ninety days after the last labor was performed or the last material was supplied. Section 2(a) then states: "*Provided, however,* That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond . . . ." In construing this language, the United States Supreme Court has indicated that Congress understood that the scope of protection of a payment bond posted pursuant to the Miller Act would extend no fur-

---

1. The Miller Act, like its predecessor the Heard Act, Act of August 13, 1894, ch. 280, 28 Stat. 278, as amended, Act of Feb. 24, 1905, 33 Stat. 811, is designed to provide an alternative remedy to the mechanics' lien procedure generally available for private construction projects. Because a lien may not ordinarily attach to government property, under the Miller Act persons supplying labor or materials for a government project are to be protected by a payment bond posted by the prime contractor. *See J. W. Bateson Co. v. Board of Trustees,* 434 U.S. 586, 589, 98 S.Ct. 873, 55 L.Ed.2d 50 (1978).

2. Judge Fisher concluded that

there was no guarantee of payment in the conversation between Nash and Miller [Dan Miller, an officer of Industrial] to pay for the prior indebtedness of Garden State to Industrial under the factual setting here. At any

rate, if there was such a promise, it would not be binding because of the bar of the Statute of Frauds under the laws of the State of New Jersey. I further conclude that any acts performed by Industrial as a result of its telephone conversations with Nash did not result in any irretrievable change of position by Industrial that the invocation of the Statute of Frauds would constitute a fraud on Industrial (citations omitted), because at the time of the telephone conversation between Melvin Nash [treasurer of Nash] and Miller, Industrial had already performed 86.36% of its contract with Garden State and there remained only $3,000 worth of work left to be performed.

App. at 68–69.

3. 40 U.S.C. § 270a(a)(2) (1976).

ther than to second-tier subcontractors—those having a direct contractual relationship with a subcontractor. *J. W. Bateson Co., Inc. v. United States ex rel. Board of Trustees of National Automatic Sprinkler Industry Pension Fund*, 434 U.S. 586, 590–92, 98 S.Ct. 873, 55 L.Ed.2d 50 (1978); *MacEvoy Co. v. United States for Use and Benefit of Calvin Tomkins Co.*, 322 U.S. 102, 107–08, 64 S.Ct. 890, 88 L.Ed. 1163 (1944). *Accord, Fidelity & Deposit Co. of Maryland v. Harris*, 360 F.2d 402, 408–09 (9th Cir. 1966); *United States for Use and Benefit of Hasco Electric Corp. v. Reliance Insurance Company*, 390 F.Supp. 158, 159–60 (E.D.N. Y.1975).

Whether or not we would have adopted the position taken in these cases,[4] the interpretation set forth in *Bateson* and *MacEvoy* governs the present factual situation. In *MacEvoy*, the Court stated:

> The proviso of § 2(a), which had no counterpart in the Heard Act, makes clear that the right to bring suit on a payment bond is limited to (1) those materialmen, laborers and subcontractors who deal directly with the prime contractor and (2) those materialmen, laborers and sub-subcontractors who, lacking express or implied contractual relationship with the prime contractor, have direct contractual relationship with a subcontractor and who give the statutory notice of their claims to the prime contractor. To allow those in more remote relationships to recover on the bond would be contrary to the clear language of the proviso and to the expressed will of the framers of the Act.[5]

Industrial, the district court found, was a third-tier subcontractor with no contractual ties to the first-tier—or primary—subcontractor Nash. Inasmuch as this finding was not clearly erroneous, Industrial is too remotely connected with subcontractor Nash to recover under the Miller Act.

In addition to challenging the district court's order on the ground that the Miller Act provided relief, Industrial raised other grounds for reversal.[6] We have reviewed

---

**4.** In a dissenting opinion, Justice Stevens, joined by Justice Brennan, criticized the approach of the *Bateson* majority. Justice Stevens initially noted that the Court had liberally interpreted the Heard Act, the legislation preceding the Miller Act, to allow recovery to all persons supplying labor or indirectly to the contractor through any subcontractor. 434 U.S. at 596, 98 S.Ct. 873, referring to *United States ex rel. Hill v. American Surety Co.*, 200 U.S. 197, 26 S.Ct. 168, 50 L.Ed. 437 (1906). Inasmuch as the Miller Act was not designed to restrict its predecessor's coverage, *see* 434 U.S. at 597, 98 S.Ct. 873, Justice Stevens suggested that "the term 'subcontractor' [should be] read to refer to any person or firm that has contracted to do any part of the work provided for in the prime contract, whether that person has dealt directly with the prime contractor *or with another subcontractor.*" *Id.* at 601, 98 S.Ct. at 881. The dissent would extend this protection to employees of a "sub-contractor" performing work on a construction job, based on the Act's similarity to state mechanic's lien laws which safeguarded more remote subcontractors. *Id.* at 602–03, 98 S.Ct. 873.

Furthermore, Justice Stevens rejected the proposition that the House Committee Report denied recovery to "more remote relationships." He examined the legislative history and concluded that remote *materialmen*, rather than subcontractors, were barred from recovering under the Miller Act. *Id.* at 604–05, 98

S.Ct. 873. Although the dissent's view is a plausible interpretation of the Act, we are nevertheless bound by the rationale of the majority in *Bateson*, which precludes Industrial's claim in the present case.

**5.** 322 U.S. at 107–08, 64 S.Ct. at 894. The Court, *see id.* at 108 n.5, 64 S.Ct. at 894 n.5, cited the committee report of the House of Representatives as support for such an interpretation. The report observed:

> "A sub-subcontractor may avail himself of the protection of the bond by giving written notice to the contractor, but that is as far as the bill goes. It is not felt that more remote relationships ought to come within the purview of the bond."

H.R.Rep. No. 1263, 74 Cong., 1st Sess. 3 (1935).

**6.** In particular, Industrial argues that:

1. The district court erred in deciding that there was no independent agreement, either implied or quasi-contractual, between Industrial and Nash;

2. Nash was estopped from denying the existence of its independent contract with Industrial because of certain misrepresentations made by Nash's officers; and

3. Nash held funds due and owing to Garden State in trust for the benefit of Industrial, and breached its obligations under that trust by making direct payments to Garden State with full knowledge of the amount due and owing to Industrial.

each of these contentions and find them to be without merit. The judgment of the district court will therefore be affirmed.