In re INCA MATERIALS, INC., Debtor.

**FIRST BULLOCH BANK & TRUST COMPANY, Plaintiff–Appellant,**

v.

**INCA MATERIALS, INC., Defendant,**

**Construction Casting Co., Defendant–Appellee.**

No. 88–8788.

United States Court of Appeals, Eleventh Circuit.

Aug. 21, 1989.

Joseph Michael Hall, Franklin & Taulbee, Statesboro, Ga. and M. Michael Egan, Atlanta, Ga., for plaintiff-appellant.

David G. Bisbee, Bisbee, Rickertsen & Herzog, Atlanta, Ga., and Steven A. Allen, Menicove, Kaufman, Weiner & Smouse, Baltimore, Md., for Const. Casting Co.

Before HILL and COX, Circuit Judges, and SNEED *, Senior Circuit Judge.

PER CURIAM:

## I. FACTS

The principal facts in this case are set forth in the joint stipulation of facts submitted to the bankruptcy court.

Between January 4, 1982 and March 20, 1986, Inca Materials executed and delivered to First Bulloch Bank & Trust Company ("First Bulloch") various promissory notes and guarantees having an outstanding balance on the date of bankruptcy of $526,-071.44. As collateral for this indebtedness, First Bulloch holds a perfected, first priority security interest in all of Inca Materials' pre-petition "accounts receivables and contract rights" and proceeds thereof.[1]

The instant controversy arises from a construction project in Baltimore, Maryland. The project was a public works project for the construction of a metropolitan bus facility. The owner was the Maryland Department of Transportation, Mass Transit Administration. Centex Construction Company ("Centex") was the general contractor for the project. Pursuant to Md. State Fin. and Proc.Code Ann. § 12–201 (1986) (the "Little Miller Act"), a payment bond was issued with respect to the project.

In November 1984, Inca Materials entered into a contract with Centex to supply miscellaneous steel materials to the project. To fulfill the contract, Inca Materials purchased certain fabricated materials from its affiliate, Inca Steel Company ("Inca Steel"). Inca Steel, in order to fulfill its purchase order with Inca Materials, purchased certain raw materials from Construction Casting Company ("Construction Casting").

Inca Steel failed to pay Construction Casting for the materials purchased for the project. Efforts to collect this debt ensued. On April 18, 1986, Construction Casting notified Centex that it intended to proceed against the payment bond due to Inca Steel's failure to pay for materials furnished. On April 28, 1986, Centex notified Inca Materials that Centex intended to withhold the amount claimed by Construction Casting from any payment to Inca Materials.

On April 30, 1986, Inca Materials and Inca Steel concurrently filed Chapter 11 bankruptcy proceedings. Subsequently, Construction Casting filed an unsecured proof of claim in the Inca Steel bankruptcy

---

* Honorable Joseph T. Sneed, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

1. The parties agree that neither sides' rights in the instant dispute are affected by the March 12, 1987 order of the bankruptcy court approving post-petition financing by First Bulloch.

case. Construction Casting also notified the bond company that, pursuant to the Little Miller Act, it was asserting a claim in the amount of $82,616.18 against the payment bond.

On September 10, 1986, Centex issued a joint check in the amount of $82,134.33 payable to Inca Materials and Construction Casting in compromise and settlement of Construction Casting's claims. This check was endorsed by Inca Materials and placed in a lock box by Construction Casting.

Inca Materials filed a motion in the bankruptcy court to release the Centex check to Construction Casting in order to settle Construction Casting's unsecured claim against Inca Steel. First Bulloch filed an objection to the motion. In December, 1987 a hearing was held before the bankruptcy court, which issued an order approving the disbursement of the Centex check to Construction Casting.

The bankruptcy court found that Inca Steel was a sub-subcontractor within the meaning of the Maryland Little Miller Act and that Construction Casting, as a supplier to a sub-subcontractor, was entitled to retain the proceeds of the Centex check. 81 B.R. 728. The court noted that Maryland cases consistently recognize that the protection offered by the Maryland Little Miller Act to people who supply materials or perform work on government projects is substantially similar to the protection offered by the mechanic's lien laws on private projects. The court declined to limit the meaning of "subcontractor" or "sub-subcontractor" to the definition of "subcontractor" found in federal Miller Act[2] cases for two reasons: (1) the court was unable to find a single Maryland case relying on the federal Miller Act to limit recovery under the Maryland Little Miller Act, and (2) the Maryland Little Miller Act extends coverage to sub-subcontractors, while the federal Miller Act does not. The bankruptcy court defined "sub-subcontractor" as

one who is somewhat removed from and something less than a subcontractor. While not adopting the broad "subcontractor" definition of the Maryland mechanic's lien law, the bankruptcy court presumed that by adding the word "sub-subcontractor," the Maryland legislature intended to broaden the scope of the Maryland Little Miller Act beyond that of the federal Miller Act. Because neither the Maryland Little Miller Act nor the Maryland cases indicate that a substantial relationship must exist between a supplier and a subcontractor for the supplier to be considered a sub-subcontractor, the bankruptcy court found that Inca Steel was a sub-subcontractor within the meaning of the Little Miller Act.

In addition, the bankruptcy court found that the funds from the Centex check never became a part of the debtors' estates and that those funds were impressed with a constructive trust in favor of Construction Casting. Relying on *United Parcel Service, Inc. v. Weben Industries, Inc.*, 794 F.2d 1005 (5th Cir.1986), the court rejected First Bulloch's assertion that the priority scheme established in § 9–310 of the Georgia Uniform Commercial Code (Ga.Code Ann. § 11–9–310), giving a bank's perfected security interest priority over a materialman's lien, renders the constructive trust fund theory obsolete. The court found that First Bulloch's argument would lead to a result which would defeat the protective goals of the Maryland Little Miller Act.

The district court affirmed the order of the bankruptcy court. The court was persuaded by the reasoning of the bankruptcy court that the broader language of the Little Miller Act suggests that the Maryland legislature intended to provide greater protection to suppliers than they are afforded under the federal Miller Act. The district court agreed that Inca Steel was a sub-subcontractor under the Little Miller Act and that Construction Casting, as a

---

**2.** The federal Miller Act, 40 U.S.C. § 270a *et seq.*, does not extend coverage to sub-subcontractors. *Clifford F. MacEvoy Co. v. United States,* 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944), a case interpreting the federal Miller Act, limited the definition of "subcontractor" to

"one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, thus excluding ordinary laborers and materialmen." *Id.* at 109, 64 S.Ct. at 894.

supplier to a sub-subcontractor, was entitled to the protection of the Maryland Little Miller Act. The district court also agreed with the bankruptcy court that the funds from the Centex check were impressed with a constructive trust in favor of Construction Casting. Therefore, the district court affirmed the disbursement of the proceeds of the Centex check to Construction Casting.

## II. DISCUSSION

On appeal, First Bulloch continues to argue that Construction Casting is not covered under the Maryland Little Miller Act. In addition, First Bulloch argues that, under Georgia law, as the holder of a perfected security interest in Inca Materials' accounts receivable and construction contract proceeds, First Bulloch is entitled to priority over Construction Casting's claim. We address each issue in turn.

Under the Maryland Little Miller Act, a supplier of a subcontractor or sub-subcontractor on a public works project has the right to proceed against the project's bond in the event of nonpayment.[3] The purpose of the Little Miller Act is to provide public works materialmen, suppliers, and laborers with security for payment in lieu of the lien they would have on private projects. The Little Miller Act provides broader coverage than the federal Miller Act because it extends coverage to "sub-subcontractors." However, the term "sub-subcontractor" is not defined anywhere in the Little Miller Act.

■ First Bulloch contends that Construction Casting is not entitled to protection under the Little Miller Act because Inca Steel is a supplier and not a sub-subcontractor. First Bulloch argues that a supplier is not a sub-subcontractor unless that supplier undertakes a substantial role in the construction project. We disagree. The bankruptcy court has given complete and serious attention to and consideration of the contentions of First Bulloch. The bankruptcy court concluded that by adding the word "sub-subcontractor," the Maryland legislature intended to broaden the scope of the Maryland Little Miller Act beyond that of the federal Miller Act. In addition, the bankruptcy court found no Maryland cases indicating that a substantial relationship must exist between a supplier and a subcontractor for the supplier to be considered a sub-subcontractor. The district court agreed. After a careful review of the record, the briefs of the parties and counsels' arguments, we find that Inca Steel was a sub-subcontractor within the meaning of the Little Miller Act.

■ Next, First Bulloch argues that the sale of goods by Construction Casting to Inca Steel is governed by the Georgia Uniform Commercial Code (UCC), under which a perfected security interest in accounts receivable is granted priority over all other

---

**3.** The Maryland Little Miller Act provides:

(c) Suits on payment bonds—Right to institute.—Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond or other security is furnished under this section and who has not been paid in full therefor before the expiration of a period of 90 days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on the payment bond or other security for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final judgment and execution for the sum or sums justly due him; provided, however, that any person having direct contractual relationship with a subcontractor of the contractor, or with any sub-subcontractor of the contractor but no contractual relationship express or implied with the contractor furnishing said payment bond or other security, shall have a right of action upon the payment bond or other security upon giving written notice to the contractor within 90 days from the date on which such person did, or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business, or his residence.

Md. State Fin. and Proc.Code Ann. § 12–201.

claimants. First Bulloch argues that as a holder of a perfected security interest in Inca Materials' accounts receivable and construction contract proceeds, it is entitled to priority over Construction Casting's claim. We disagree.

The bankruptcy court found, and the district court agreed, that the proceeds of the Centex check never became part of the debtors' estates and that those funds were impressed with a constructive trust in favor of Construction Casting. The bankruptcy court relied on *United Parcel Service, Inc. v. Weben Industries, Inc.,* 794 F.2d 1005 (5th Cir.1986). In *United Parcel Service,* the court cited an earlier Fifth Circuit case, *Cutler–Hammer, Inc. v. Wayne,* 101 F.2d 823 (5th Cir.) *cert. denied,* 307 U.S. 635, 59 S.Ct. 1031, 83 L.Ed. 1517 (1939) for the proposition that the constructive trust fund theory is valid in Georgia. In *Cutler–Hammer,* the old Fifth Circuit held that when "the owner deposits in the bankruptcy court the unexpended balance of the [construction] contract price, he deposits it to the extent necessary to discharge the liens, not as money of the estate, but as money of the lien claimants." *Id.* at 825. As pointed out in *United Parcel,* the critical issue resolved by *Cutler–Hammer* was that the money deposited into the court never became part of the debtor's estate.

The *United Parcel* court then went on to determine that the constructive trust theory remained viable under Georgia law following the enactment of the Georgia UCC. In *United Parcel,* the appellee argued, as does First Bulloch, that § 9–310 of the Georgia UCC renders the constructive trust fund theory obsolete. The *United Parcel* court rejected that argument finding no support for it in either the legislative history or Georgia cases. The bankruptcy court and the district court agreed. After a careful review of the record, the briefs of the parties and counsels' arguments, we find that (1) the proceeds of the Centex check never became part of the debtors' estates; (2) the proceeds of the Centex check were impressed with a constructive trust in favor of Construction Casting; and (3) Georgia UCC § 9–310 does not render the constructive trust fund theory obsolete.

## III. CONCLUSION

For the reasons stated above, the order of the district court, holding that Construction Casting is entitled to the proceeds of the Centex check, is

AFFIRMED.