# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 7, 2008

Charles R. Fulbruge III
Clerk

No. 07-60134
Summary Calendar

United States of America for the use and benefit of
A&R SUPPLY OF MISSISSIPPI, a Division of Just-Rite Supply, Inc.,

                              Plaintiff–Appellee,

v.

TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA,

                              Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:06-CV-111

Before HIGGINBOTHAM, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

The district court granted partial summary judgment to A&R Supply of Mississippi on its Miller Act[1] claim against Travelers Casualty & Surety Company of America (Travelers). Travelers timely appealed, claiming that the district court erred by rejecting its estoppel defense, and arguing that public

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] 40 U.S.C. § 3133.

policy compels a reevaluation of our Miller Act jurisprudence. This case is controlled by United States for Use of Friedrich Refrigerators, Inc. v. Forrester,[2] and we therefore affirm.

I

The United States awarded Debcon, Inc. (Debcon) a contract to develop naval housing units. Debcon received a surety payment bond from Travelers and subcontracted with Allen's Construction, Inc. (Allen's) to install gypsum board. Allen's asked Just-Rite Supply, Inc. (Just-Rite) to supply the board. Just-Rite agreed to supply the materials for $365,000, but because of concerns that Allen's was not creditworthy, Just-Rite required Debcon and Allen's to enter a joint check agreement. Under this agreement, Debcon would pay $365,000 for the gypsum board through checks written jointly to Allen's and Just-Rite; each check would require an endorsement from both recipients. Just-Rite drafted the agreement with the express purpose of providing adequate assurances of payment.

Although Debcon made numerous payments under this agreement, Just-Rite ultimately suffered a shortfall traceable to the parties' failure to specify how the check recipients should divide the payments. Some of the money from Debcon was due to Allen's for supplying labor, while the remainder of the funds was due to Just-Rite for supplying materials. The firms never stipulated how much of each check was for labor and how much was for supplies. Debcon did not know how the parties were dividing the funds, nor was it able to provide the proper division upon Just-Rite's request. The recipients apparently varied their method of division. In some instances, they relied upon an estimate sheet that understated the cost of materials; in others, they used the value of the materials Just-Rite shipped. The accounting was further complicated after Allen's wrote

---

[2] 441 F.2d 779 (5th Cir. 1971).

a bad check to Just-Rite. The bounced check, which was to cover Just-Right's portion of a payment from Debcon, left Just-Rite with a large deficit from past periods. Debcon ultimately wrote joint checks totaling $668,613.83, although the agreement only required Debcon to pay $365,000 for materials supplied by Just-Rite. From the $602,216.38 of checks that Just-Rite concedes it endorsed, Just-Rite retained only $261,594.65 of the $355,578.97 it was owed. As a result, Just-Rite suffered a shortfall of $93,984.32.

A&R Supply of Mississippi (A&R), a division of Just-Rite, filed a complaint in the United States District Court for the Southern District of Mississippi against Allen's, Debcon, and Travelers to recover this deficit. It alleged violations of state law and the Miller Act. The district court granted summary judgment in favor of A&R on its Miller Act claim against Travelers, and Travelers timely appealed.

II

Travelers contends that the district court erroneously rejected its affirmative defense of promissory estoppel. We review the district court's grant of summary judgment de novo, examining the record in the light most favorable to the nonmoving party and drawing all inferences in its favor.[3]

The Miller Act requires recipients of certain government construction projects to obtain a performance bond and a payment bond. The Act allows suppliers of labor and materials to bring civil actions on the payment bond for any amount unpaid after they complete their contractual obligations.[4] The Act's purpose "'is to protect those who furnish labor and material for public construction and to insure that they will be paid for the same.'"[5] The Miller Act

---

[3] Hockman v. Westward Commc'ns, L.L.C., 407 F.3d 317, 325 (5th Cir. 2004).

[4] 40 U.S.C. § 3133(b)(1).

[5] Graybar Elec. Co. v. John A. Volpe Constr. Co., 387 F.2d 55, 58 (5th Cir. 1967) (quoting St. Paul Mercury Indem. Co. v. United States for Use of H.C. Jones Constr. Co., 238

"is highly remedial in nature and is 'entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects.'"[6]

It is well settled that estoppel is a proper defense to a Miller Act claim.[7] Under our precedent, a party asserting an estoppel defense must show that it was misled to its detriment.[8] Travelers argues that Just-Rite misled Debcon into believing that Just-Rite would retain, or was retaining, payment from Debcon's checks. Travelers asserts that Just-Rite represented it would retain payment by requiring and drafting a joint check agreement with the specified purpose of providing Just-Rite adequate assurances of payment. According to Travelers, "[b]y the joint agreement it drafted, Just Rite assured Debcon that Just Rite would be paid." Travelers also claims that Just-Rite represented it was being paid by endorsing joint checks for roughly twice the value of the materials supplied and the amount Debcon was required to pay under the joint check agreement. It argues that these "endorsements . . . amounted to representations that Just-Rite had been paid."

We rejected a virtually identical contention in United States for Use of Friedrich Refrigerators, Inc. v. Forrester.[9] We stated that the subcontractor's

---

F.2d 917, 921 (10th Cir. 1957)).

[6] United States for Use and Benefit of Clark-Fontana Paint Co. v. Glassman Constr. Co., 397 F.2d 8, 10 (4th Cir. 1968) (quoting Clifford F. MacEvoy Co. v. United States, for Use and Benefit of Calvin Tomkins Co., 322 U.S. 102, 107 (1944)).

[7] See, e.g., United States for the Use and Benefit of Jinks Lumber Co. v. Fed. Ins. Co., 483 F.2d 153, 157 (5th Cir. 1973); Freidrich Refrigerators, 441 F.2d at 783; Graybar, 387 F.2d at 59-60.

[8] See Freidrich Refrigerators, 441 F.2d at 783.

[9] Id.

4

request for the joint payment procedure did not constitute a waiver of its rights under the Miller Act, but was simply a request for and acceptance of additional security. Consequently, even the acceptance by [the subcontractor] of the jointly made check offered by [the contractor] would not have defeated recovery by [the subcontractor] under the Miller Act, if [the subcontractor] in fact remained unpaid (assuming [the subcontractor] had not also executed a binding release or waiver of its Miller Act rights).[10]

Just-Rite's endorsement of the joint checks was not a representation that it had been paid. As noted above, a supplier's request for a joint payment procedure is a request for assurances of payment, which is normally construed as a request to supplement its Miller Act rights.[11] The request will only limit Miller Act rights if it includes a "clear expression" of the supplier's intent "to waive the protection afforded by the Miller Act."[12] The facts here—including that the supplier drafted the agreement, stated the agreement was for "adequate assurance" of payment, endorsed checks of a value far exceeding its deficit, and had authority under the agreement to sign on behalf of Allen's and retain the amounts it was owed—at most communicate a desire to supplement the Act's protections and an opportunity to retain payment. They do not represent that Just-Rite retained payment from Debcon's checks.

Nevertheless, Travelers contends that the district court's decision contradicts the purpose of the Miller Act. Citing Graybar, it argues that the Miller Act was "provided for the protection of the 'innocent,'" and that Just-Rite is not "innocent" because it could have retained enough to cover the amounts it was owed.[13]

---

[10] Id. at 782-83.

[11] Id. at 782.

[12] Id.

[13] Graybar Elec. Co. v. John A. Volpe Constr. Co., 387 F.2d 55, 59 (5th Cir. 1967).

This argument is unpersuasive. Graybar involved a general contractor that sought to protect its interests. Unlike some general contractors that "could have done more to protect" themselves, the general contractor in Graybar "did everything it reasonably could do to protect itself short of completely taking over the operation of" its subcontractor.[14] It is "[u]nder such circumstances" that a general contractor may raise the defense of estoppel.[15] Our review of the record shows that unlike the general contractor in Graybar, Debcon did little to protect its own interests. Debcon assented to the joint check agreement without demanding an allocation of payment between labor and supplies or requiring Just-Rite explicitly to waive its rights under the Miller Act. After the parties signed the agreement, Debcon wrote checks without specifying the amount for Just-Rite, requiring partial releases from Just-Rite, or verifying that Just-Rite was retaining payment. Unlike Graybar, this case does not involve a culpable supplier exploiting a general contractor that sought to protect its own interests.

For these reasons, Travelers has failed to show that A&R is equitably estopped from bringing a Miller Act claim.

### III

Given that our longstanding Miller Act precedent favors Just-Rite, Travelers invites us to reconsider our cases in light of the "realities of the commercial construction industry." It claims that contractors customarily use joint checks to protect themselves. Travelers further asserts that its industry follows a rule that "the maker of a joint check, which is subsequently endorsed by the material supplier, is deemed to have paid the material supplier." According to Travelers, these factors "compel[] a re-evaluation of cases denying a surety the defense of equitable estoppel in a Miller Act case."

---

[14] Id. at 60.

[15] Id.

We are bound by Freidrich Refrigerators[16] and have adopted the Fourth Circuit's reasoning in Glassman.[17] We may not reevaluate our precedent here. Moreover, Travelers gives no reason why the construction industry is unable to conform its practice to the law. As stated previously, Debcon could have required Just-Rite explicitly to waive its Miller Act rights, sought periodic partial releases from Just-Rite, or required Just-Rite to verify that it was retaining payment. The other parties similarly could have acted to protect their own interests. In fact, a representative of A&R gave deposition testimony that A&R has already changed its joint-check policy as a result of this dispute. Travelers has not shown that the commercial construction industry is incapable of adapting to the decades-old precedent of this court.

*     *     *

We AFFIRM the judgment of the district court.

---

[16] Freidrich Refrigerators, 441 F.2d at 782-83.

[17] Id. at 782-84 (citing United States for Use and Benefit of Clark-Fontana Paint Co. v. Glassman Constr. Co., 397 F.2d 8, 11 (4th Cir. 1968)).