# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 24-7020

September Term, 2024

FILED ON: JANUARY 14, 2025

UNITED STATES OF AMERICA, FOR THE USE AND BENEFIT OF AMERICAN CIVIL CONSTRUCTION, LLC,

APPELLEE

v.

HIRANI ENGINEERING & LAND SURVEYING, PC,

APPELLEE

COLONIAL SURETY COMPANY,

APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-00745)

Before: SRINIVASAN, *Chief Judge*, HENDERSON and PILLARD, *Circuit Judges*.

## J U D G M E N T

The court considered this appeal on the record from the United States District Court for the District of Columbia and the briefs filed by the parties. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). We accorded the issues full consideration and determined they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is hereby

**ORDERED AND ADJUDGED** that the judgment of the district court is **AFFIRMED**.

## I.

This appeal is the latest development in the long-running litigation between American Civil Construction (ACC) and two entities it sued for breach of contract, Hirani Engineering & Land Surveying and Colonial Surety Company.[1] The procedural history of this dispute is long and

---

[1] The full history of this litigation is detailed in six prior decisions issued by this court and the district court: *United States ex rel. Am. Civil Constr., LLC v. Hirani Eng'g & Land Surveying, P.C.* (*Hirani I*), 263 F. Supp. 3d 99 (D.D.C. 2017); *Hirani II*, 345 F. Supp. 3d 11 (D.D.C. 2018) (stating district court's findings of fact and conclusions

winding, but for current purposes we need only summarize the most pertinent facts.

Hirani served as the prime contractor on a United States Army Corps of Engineers project to construct a levee flood wall in Washington, D.C. *Hirani II*, 345 F. Supp. 3d at 21 ¶ 4, 22 ¶ 9. In turn, Hirani hired ACC to work as a subcontractor on the project. *Id.* at 22 ¶ 13. The total price for ACC's services under the subcontract, including approved change orders, was $ 3,459,250. *Hirani III*, 2019 WL 162019, at *4-5 (stating subcontract price including contract "Option 1"). Under the Miller Act, Hirani was required to obtain a payment bond to protect "all persons supplying labor and material in carrying out the work provided for in the contract." *Hirani IV*, 26 F.4th at 956 (quoting 40 U.S.C. § 3131(b)(2)). That included its subcontractor, ACC. Hirani, as principal, obtained the payment bond from Colonial, which served as the surety. *Hirani II*, 345 F. Supp. 3d at 22 ¶ 12.

The construction was beset by delays, unexpected modifications, and technical snafus, and the Army Corps of Engineers eventually terminated Hirani for default, which effectively ended ACC's participation. *Id.* at 30 ¶ 92, 32 ¶ 104. *See Hirani IV*, 26 F.4th at 954. ACC filed suit in district court seeking to collect against Hirani on the subcontract and against Colonial on the Miller Act payment bond. *See* 40 U.S.C. § 3133(b)(1).

## II.

In resolving the breach of contract claim, the district court awarded ACC restitution against Hirani in the amount of $ 425,319.50, which was capped under District of Columbia law based on the contract price, and granted an uncapped award of $ 1,544,957.29 against Colonial under the Miller Act for the full amount of the reasonable value of the labor, services, and materials that it furnished to the project. *Hirani III*, 2019 WL 162019, at *3-5. The district court explained its rationale for the disparate awards against the two defendants. On the breach of contract claim against Hirani under D.C. law, the district court drew on the Restatement (Third) of Restitution and Unjust Enrichment to conclude that ACC's recovery for performance-based restitution was limited to the balance of its expectancy under the contract. *Id.* at *4-5. The court calculated that amount to be $ 425,319.50 (before pre-judgment interest). *Id.* By contrast, the court determined that a Miller Act award against Colonial was not limited to expectancy. It therefore awarded ACC $ 1,544,957.29 (before pre-judgment interest) under a *quantum meruit* theory to compensate for the reasonable value of the full extent of ACC's performance, which involved far more work over a period roughly triple the duration the contract specified. *Id.* at *3; *see Hirani II*, 345 F. Supp. 3d at 22 ¶ 15, 24 ¶ 37, 32 ¶ 104; *see, e.g., id.* at 26 ¶ 54 ("From July 3, 2012, to April 23, 2013, the USACE issued numerous unilateral change orders and constructive change directives to Hirani, who in turn subcontracted the work to ACC to complete these change orders.").

---

of law); *Hirani III*, No. 14-cv-00745, 2019 WL 162019 (D.D.C. Jan. 10, 2019); *Hirani IV*, 26 F.4th 952 (D.C. Cir. 2022), *amending* 962 F.3d 587 (D.C. Cir. 2020); *Hirani V*, 58 F.4th 1250 (D.C. Cir. 2023); and *Hirani VI*, No. 14-cv-00745, 2024 WL 754630 (D.D.C. Jan. 18, 2024).

In a prior appeal, we largely affirmed the district court's awards. *See Hirani V*, 58 F.4th at 1251-53. Colonial's appeal pressed two points: that *quantum meruit* was inapplicable because there was an express contract from which damages could be calculated and that, in any event, the subcontractor's *quantum meruit* award against the surety could not exceed its expectation damages against the prime contractor. *Id.* at 1251. We rejected both claims of error. We held that, "[e]ven if D.C. contract law caps the subcontractor's restitution recovery against the prime contractor to expectation damages and does not permit recovery in *quantum meruit* where there is an express contract, no such limit applies to the claim against the surety under the Miller Act." *Id.* That conclusion followed from the "highly remedial nature" of the Act, which the Supreme Court held should be liberally construed to protect subcontractors who work on public projects. *See id.* at 1252 (quoting *Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co.*, 322 U.S. 102, 107 (1944) (formatting altered)).

We then remanded the case to the district court to address two narrow issues. First, Colonial had argued that the awards would afford ACC an impermissible double recovery because the district court had calculated the *quantum meruit* recovery of $ 1,544,957.29 against Colonial to include the expectancy amount of $ 425,319.50 it awarded against Hirani—rather than calculating the *quantum meruit* award to include *only* the work performed beyond the contract-based expectancy. *Id.* at 1252-53. On remand, we instructed the district court to explain whether the two awards would yield a double recovery by clarifying the extent of the overlap between them, if any. *Id.* at 1253.

Second, we had reversed the district court on one component of the *quantum meruit* calculation, holding that the Miller Act entitled ACC to compensation for the reasonable value of services provided by the superintendent at the construction site. *Id.* at 1254. We therefore instructed the district court on remand to calculate the appropriate compensation amount. *Id.* at 1254-55.

The district court completed the limited tasks we assigned it on remand. It clarified that "it was never the court's intention to compensate Plaintiff twice for the same injury," and that $ 1,544,957.29 was the reasonable value of all of ACC's unpaid services arising from the construction project. *Hirani VI*, 2024 WL 754630, at *2 (formatting altered). The court made it clear why ACC is not entitled to double recovery:

> The maximum sum Plaintiff can recover for amounts unpaid on the Project is $ 1,544,957.29. Plaintiff can seek to recover that award (1) from Colonial alone or (2) in part from Colonial and in part from Hirani. If Plaintiff elects to enforce the award against Hirani, and succeeds in doing so (up to $ 425,319.50), any dollars recovered from Hirani would reduce the sum Plaintiff could recover from Colonial . . . Thus, the awards are not additive, but concurrent to one another with any recovery from Hirani resulting in a dollar-for-dollar offset against the amount owed by Colonial.

*Id.*

3

The district court held that ACC is entitled to $ 150,000 for its superintendent's services. *Id.* at \*3. The court acknowledged that was "a rough estimate," but explained that it was "rooted in the record evidence." *Id.* The court thus made conforming revisions to the final judgment, adding the reasonable value of the superintendent's services, along with the requisite pre- and post-judgment interest.

The district court's updated judgment awards ACC $ 2,591,616.59 against Colonial under the Miller Act and $ 568,500.50 against Hirani under D.C. contract law. Second Final Order (J.A. 181).

## III.

We have jurisdiction over this appeal under 28 U.S.C. § 1291. "We review the district court's findings of fact for clear error, but resolve issues of law *de novo*." *Spanski Enterprises, Inc. v. Telewizja Polska, S.A.*, 883 F.3d 904, 909 (D.C. Cir. 2018) (citation omitted). Colonial raises three issues in the present appeal: (1) "whether the District Court erred in awarding vastly different damages for the same work;" (2) "whether the award of damages creates an impermissible double recovery;" and (3) "whether the basis for the award of [the superintendent's] services was impermissibly speculative." Colonial Br. 2 (formatting altered). We address each in turn. Because Colonial's arguments are either foreclosed by the law-of-the-case doctrine or lack merit, we affirm the decision of the district court.

*Differing awards*: Colonial contends that the validity of the *quantum meruit* award against it has yet to be decided. Colonial Br. 11. To the contrary, we already considered and rejected Colonial's challenge. We held that *quantum meruit* damages against the surety under the Miller Act can exceed expectation damages against the prime contractor under D.C. law for the same construction project. *Hirani V*, 58 F.4th at 1251. That is because the Miller Act provides protection beyond what ordinary contract law affords, requiring payment bonds on federal government contracts and entitling subcontractors to recover the full value of their services and materials, including those resulting from delays not contemplated under the written contract. *See id.* at 1251-52. Law-of-the-case doctrine prevents Colonial from reopening an issue this court has already decided. *See Bahlul v. United States*, 77 F.4th 918, 925 (D.C. Cir. 2023). We do not further pass on an issue decided on the prior appeal.

*Double recovery*: Colonial continues to assert that there is overlap between losses covered under the *quantum meruit* award against it and the expectation damages award against Hirani, allowing ACC to recover the same damages twice. Colonial Br. 22-24. There is indeed some overlap, and the district court acknowledged as much and explained that the overlapping amount can only be recovered once. It calculated the single, maximum sum that ACC could recover for amounts unpaid on the construction project. It also made clear that any amount paid by Hirani as restitution offsets the total *quantum meruit* amount owed by Colonial and, likewise, that any payment by Colonial would reduce by an equal amount what Hirani owes to ACC.

4

To the extent that Colonial is challenging the district court's underlying calculations, it has already had ample opportunity to do so. *See generally* Defs.' Objections to Pl.'s Corrected Revised Damages Calculation, *Hirani II*, 345 F. Supp. 3d 11 (D.D.C. 2018) (No. 14-cv-00745). The district court considered Colonial's arguments and rejected them. *See Hirani III*, 2019 WL 162019, at *1-5. Colonial has no persuasive justification for belated revision of the district court's calculations.

*Superintendent's work*: Finally, Colonial argues that the district court erred in calculating the reasonable value of the superintendent's labor because it "made no specific findings of fact and referenced no specific testimony, nor evidence." Colonial Br. 26. This damages calculation is reviewed for clear error. *See* Fed. R. Civ. P. 52(a); *Bucheit v. Palestine Liberation Org.*, 388 F.3d 346, 350 (D.C. Cir. 2004). Again, Colonial has not shown that the district court's factual determination was clearly erroneous. The court reasonably explained its valuation of the superintendent's work based on the evidence of record, including trial testimony from Irene Stephen, who served as Hirani's on-site Contractor Quality Control Assistant on the construction project. *See Hirani VI*, 2024 WL 754630, at *2-3; *Hirani II*, 345 F. Supp. 3d at 19.

For the foregoing reasons, we affirm the decision of the district court.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**<u>Per Curiam</u>**

FOR THE COURT:
Clifton B. Cislak, Clerk

BY:    /s/
Daniel J. Reidy
Deputy Clerk