**UNITED STATES ex rel. PURITY PAINT PRODUCTS CORPORATION v. ÆTNA CASUALTY & SURETY CO. et al.**
Civil Action No. 1001.

District Court, D. Connecticut.
Aug. 18, 1944.

David R. Lessler, of Bridgeport, Conn., for plaintiff.

John A. Maresca, of New Haven, Conn., for defendants.

HINCKS, District Judge.

The Heard Act was enacted in 1894, 28 Stat. 278, 40 U.S.C.A. § 270. It provided that every formal contract for the construction of a public building should be supported by a single bond conditioned upon due performance and upon prompt payment by the contractor or contractors of "all persons supplying him or them with labor and materials in the prosecution of the work provided for" in such contract. The Act, however, contained no other language (than that just quoted) to indicate whether liability under the bond should attach when material was "furnished" by delivery at the site or not until and unless the material was actually incorporated into the work.

In 1905 the Heard Act was amended. 33 Stat. 811. The amended Act, like the original Act, required that the payment bond should run to all persons supplying "labor and materials in the prosecution of the work," and also included a provision not appearing in the original, viz.: "and any person * * * who has furnished labor or materials used in the construction" shall have a right of action on the bond. The language thus inserted by amendment plainly states a limitation: the right of action created thereunder was confined to those whose material was "used" in the work. And there are a number of cases which make it plain that under this amendment the liability of the principal contractor and his surety on the bond extended only to materialmen who proved that they had furnished material which had been actually used in the building.

But in 1935 the Heard Act, amended as aforesaid, was repealed by the Miller Act. 49 Stat. 793, Sec. 5. The Miller Act, 40 U.S.C.A. 270a et seq., follows the phraseology of the Heard Act as it existed prior to the amendment of 1905 by providing that the required payment bond should be "for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract." 40 U.S.C.A. § 270a. And it wholly omits the language of the 1905 amendment whereby the right of action is limited to those whose material is used in the work.

We have then this situation. The 1905 amendment, with its limitation, was wiped off the slate by the repeal contained in the Miller Act. This omission, coupled with the reenactment of the precise language of the original Heard Act as it existed before the 1905 amendment, I think, has significance in indicating legislative recognition that the relief available under the original act had a broader scope and a legislative intent to make that broader scope presently available to those affected.

This view also finds powerful corroboration in that provision of the Miller Act, Sec. 2(a), 40 U.S.C.A. 270b(a) which extends the liability of the bond to one who has "not been paid * * * before the expiration of a period of ninety days after the date on which the last of the * * * material was furnished or supplied by him." If, as the defendant in effect urges, I should construe this plain language to mean "supplied by him and actually incorporated into the work," I should in effect be injecting a limitation not contained in the act. And if an express limitation in the Act may not be removed by judicial construction, Clifford F. MacEvoy Co. v. United States, 322 U.S. 102, 64 S.Ct. 890, still less is there warrant for injecting by construction a limitation into an Act which is entitled to a liberal construction.

It will also be noted that the proviso of Sec. 2(a) of the Act states that one furnishing material to a sub-contractor "shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person * * * furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied," etc. Thus the right of action is expressly stated to exist upon the giving of such notice although conceivably the materials furnished might not be used until a later date.

Also, perhaps it is worth noting that here the provisions of Article 16 of the Contract (Finding No. 5 above) show that the parties to the bond (which incorporates the contract and follows the language of the Act) construed the bond as I construe the Act. For the contract expressly contemplates that part payments may be made to the contractor on account of materials fur-

nished irrespective of whether they have been "used."

Practical considerations do not conflict with this liberal construction. The argument that my construction leaves the prime contractor at the mercy of dishonest sub-contractors who might divert material delivered to the work to other jobs, is superficial only. The prime contractor, as the defendant's testimony in this very case discloses, if diligent in his supervision can detect such practices and adopt practical safeguards. As was observed in the Mac-Evoy case [322 U.S. 102, 64 S.Ct. 895]: "It is easy for the prime contractor to secure himself against loss by requiring the subcontractors to give security by bond, or otherwise, for the payment of those who contract directly with the subcontractors." And after all, the prime contractor selects his own sub-contractors and it seems not unduly harsh that he should be holden for their skulduggery (without intimation that the situation here was the product of such practices).

The cases upon which the defendants rely dealt with statutes other than the Miller Act. I find no published cases which turn upon the construction of the Miller Act in its aspect here involved. And it will serve no useful purpose to discuss cases decided under the Heard Act, or under State statutes not shown to have particular impact upon the legislative history of the Miller Act.

Although under the statute as I construe it, the claim is covered by the bond, the defendant bondsmen stand only as indemnitors, at liberty to interpose any defense available to the sub-contractor. And the ultimate burden of proof I hold to rest upon the use-plaintiff. He must prove not only that he furnished paint but also that the paint furnished was in accordance with his contract with the sub-contractor which called for paint conforming with the specifications of the principal contract.

This burden I think the use-plaintiff has sustained. The defendants' witnesses agree that the paint furnished was subjected to analysis and found to have a chemical content conforming to specifications. The manufacturer's affidavits as to quality, as required by the specifications, were accepted and approved. The containers were labelled as required.

The defendants' objection that irrespective of the chemical content two coats of the paint furnished seemed not satisfactorily to cover the specified surfaces assumes the presence in the specifications of some stipulation not therein contained or not applicable to the materialman. The general requirement of Article 7 of the contract (Findings, Par. 5) that all material should "be of the best grade" must yield to the express accompanying provision "unless otherwise specifically provided for in these specifications," and proof of compliance with the specific requirements was sufficient.

Indeed, the defendant's objections were all based upon practical applications of the paint made by employees of the sub-contractor. On the evidence, it not appearing that all the requirements of good workmanship had been complied with, it is as reasonable to attribute the results complained of to defective preparation of the surface (Specifications, Sec. 8, Par. 1) or to defective mixing (See also Specifications, Sec. 9) as to defective materials. In this connection it will be remembered that none of the defendants' witnesses actually saw the paint mixed or applied. And the fact that the sub-contractor's foreman was discharged about this time tends to support such an explanation and also to explain the defendants' testimony that the paint which was later obtained gave better and satisfactory results.

The defendant's testimony that the use-plaintiff was offered an opportunity to demonstrate through its own workman that the paint could be made to give satisfactory results was disputed. But the evidence even if true was without significance. Nothing in the contract or specifications imposed the burden upon the plaintiff—a materialman—to give a practical demonstration of its wares. If, as I find, its other proofs demonstrated the compliance required of a materialman, it had proved enough. And in this connection it may be observed that if the plaintiff's product had not stood up on analysis mere proof that it gave a satisfactory result would not save its case.

Since the contract was to be performed in Connecticut, the measure of damages will be determined by the law of Connecticut applicable to the situation involved here. The return of the paint to the use-plaintiff was equivalent to a non-acceptance of the goods for which the measure of damages is as stated in G.S.Conn. (1930) Sec. 4684, as follows:

"The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract. When there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept."

Paragraph 8 of my findings gives application to this measure.

### Conclusions of Law

1. It is not essential to a recovery by a materialman on the payment bond required under the Miller Act that the materials furnished to a sub-contractor by delivery at the site of the work be thereafter actually incorporated into the project.

2. The bondsmen on the payment bond involved in this case are liable to the use-plaintiff for damages as measured by G.S. Conn. Sec. 4684.

3. The use-plaintiff is entitled to recover of the defendants damages in the amount of $1784.23 and its costs.

Let the Clerk enter judgment accordingly forthwith.