ERB LUMBER CO., a Michigan corporation, Plaintiff,

v.

GREGORY INDUSTRIES, LTD., a Michigan corporation, Randolph Jordan, and International Fidelity Insurance Company, a New Jersey corporation, Jointly and Severally, Defendants.

No. 89–71022.

United States District Court,
E.D. Michigan, S.D.

July 16, 1991.

Ronald Strote, Bloomfield Hills, Mich., for plaintiff.

Thomas Misuraca, Detroit, Mich., for defendants.

## MEMORANDUM AND ORDER

COHN, District Judge.

### I.

This action is brought under the Capehart Act, 42 U.S.C. § 1594, and the Miller Act, 40 U.S.C. 270a *et seq.*[1] Plaintiff Erb Lumber Company (Erb) seeks to recover payment for materials provided for use on a project at the Selfridge Air National Guard base. In Count I, Erb seeks recovery pursuant to the Capehart Act, on a labor and material payment bond from defendant Gregory Industries, Ltd. (Gregory), the principal, and defendant International Fidelity Insurance Company (International), the surety. Count II is an action against Gregory and International under the Miller Act for payment on a Miller Act bond. Count III is an action against Gregory and defendant Randolph Jordan, the guarantor of Gregory's account, for payment for materials supplied by Erb.

International now moves for summary judgment, arguing that: 1) Count I is barred by the statute of limitations and 2) the materials at issue in Count II were not covered by the Miller Act bond. Erb has responded, arguing: 1) the Miller Act statute of limitations is not incorporated into a Capehart Act bond, and 2) that the Miller Act covers the materials at issue in Count II. Because the Court finds that Count I is time-barred and that Count II is not covered by the Miller Act, International's motion is GRANTED.

### II.

The following facts are undisputed. This action arises out of two construction projects at the Selfridge Air National Guard Base (Selfridge) in Mt. Clemens, Michigan. Gregory was the prime contractor on both projects and, as part of its contractual obligations with respect to each, exe-

---

1. The Capehart Act governs contracts for construction of urgently needed housing on lands owned or leased by the United States and situated on or near a military installation. 42 U.S.C. § 1594(a). It requires that contractors furnish a payment bond for the protection of materialmen who provide supplies for such construction. The Miller Act governs contracts exceeding $25,000 in amount for construction, alteration, or repair of public buildings or public works of the United States and also requires that contractors furnish a payment bond for the protection of materialmen. 40 U.S.C. § 270a(a).

cuted two separate payment bonds in which International is named as surety.

Erb provided materials to Gregory under contracts DAA–E07–86–C–Q078 (the Capehart contract) and DAH–A20–86–C–6058 (the Miller contract), between Gregory and the United States. The Capehart contract required that Gregory replace certain roofs at the Capehart housing facility at Selfridge. The contract was for an amount greater than $25,000. On September 30, 1986, a payment bond was executed by Gregory and International with respect to the Capehart contract. The United States is the sole obligee.

The government then issued a notice to proceed on the Capehart contract, received by Gregory on June 8, 1987. The contract provided that the work was to be completed within 240 calendar days of the date of receipt of the notice to proceed. The Capehart contract closed in October 1988. Erb provided its last shipment of materials under the contract on January 12, 1988.

The Miller contract was for the repair of roofs on various buildings located at Selfridge. On April 30, 1986, a payment bond was executed by Gregory and International with respect to the Miller contract. The government's notice to proceed with work was received on June 3, 1986. Pursuant to the contract, work was to be completed within 140 calendar days of receipt of the notice to proceed. On December 2, 1986, Gregory notified the government that all work was complete. In a progress report dated December 1, 1986, the government found the contract work to be 99.20 percent complete. All work specified in the Miller contract was certified as complete in a final inspection report dated September 17, 1987. Because of a dispute between the government and Gregory that was not settled until January 11, 1990, the contract was closed out on April 2, 1990.

According to Erb's delivery receipts, the first delivery of material, allegedly made under the Miller contract, took place on December 3, 1987. Erb made its last such delivery on September 26, 1988. Gregory had two separately numbered accounts with Erb. One was known as "Capehart Housing," and the other was known as "Selfridge Air National Guard." The account billed depended on the location where the materials were delivered. Gregory opened its accounts with Erb in August 1987. During the relevant time period, Gregory also served as the contractor on two other projects at Selfridge.

### III.

#### A.

██ International first argues that Count I of Erb's complaint, which was filed on April 3, 1989, is barred by the statute of limitations. The Capehart Act contains no statute of limitations, but courts have held that the statute of limitations contained in the Miller Act also governs actions brought under the Capehart Act. *See, e.g., Missouri–Illinois Tractor & Equipment Co. v. D & L Constr. Co.*, 337 F.2d 507, 508 (8th Cir.1964) (Blackmun, J.). The relevant provision of the Miller Act states that "no . . . suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied." 40 U.S.C. § 270b(b). Because it is undisputed that Erb's last delivery under the Capehart contract took place on January 12, 1988, application of the Miller Act limitations period would necessitate the dismissal of Count I.

In opposition to International's motion, Erb relies heavily on *Miles Lumber Co. v. Harrison & Grimshaw Constr. Co.*, 305 F.2d 363, 369 (10th Cir.1962), which contains the statement: "We are concerned [in the case before us] with a Capehart Act project bond, and we are convinced that the Miller Act has no application to such a bond." Based on *Miles*, Erb argues that there is a split of authority among courts of appeals as to whether the statute of limitations in the Miller Act applies to actions under the Capehart Act. This is not entirely true. The split of authority concerns the extent to which the Miller Act's notice provisions, 40 U.S.C. § 270b(a), which establish the procedure to be followed before commencing suit, apply to Capehart Act bonds.

All of the cases cited by Erb as support for its position involve a choice between differing notice provisions. That is, they involve a determination as to whether the notice provisions explicitly stated in a Capehart Act bond or the notice provisions set forth at 40 U.S.C. § 270b(a) control. Even the case applying Michigan law cited by Erb as an indication of how the Court of Appeals for the Sixth Circuit might rule on the question presented in this case, *Hub Elec. Co. v. Gust Constr. Co.*, 585 F.2d 183 (6th Cir.1978), involves a conflict between statutory notice provisions and the notice provisions contained in a bond.

As to the limitations provision of the Miller Act, contained in 40 U.S.C. § 270b(b), there is no conflict. The statute of limitations in the Miller Act applies to Capehart Act bonds. *See Missouri–Illinois Tractor & Equipment Co. v. D & L Constr. Co.*, 337 F.2d 507, 508 (8th Cir. 1964). While Erb argues that picking and choosing which Miller Act provisions are incorporated into the Capehart Act is unprincipled, the Court views the situation differently. In *Continental Casualty Co. v. Robertson Lumber Co.*, 305 F.2d 794, 799 (8th Cir.1962), the court noted that the notice provisions at issue, which differed from those in the Miller Act, had been inserted into the bonds by the federal agencies charged with administering the Capehart Act. Therefore, the *Robertson* court chose to defer to the notice requirements placed in the bonds by the agencies. The limitations provision at issue here is quite different. Its function is to establish the parameters of federal court jurisdiction over Capehart Act claims. Such a provision is, by definition, statutory and does not appear in the terms of a bond itself. Nor would it be a matter to be left to the discretion of a federal agency. Having established this distinction, the Court finds that there is no persuasive reason not to apply the Miller Act's one-year limitation to Count I of Erb's complaint. As a result, Count I is DISMISSED.

### B.

The Miller Act, 40 U.S.C. § 270a(a)(2), requires that a general contractor on a federal project post a bond for the purpose of protecting the suppliers of materials for the project, and it is to be construed liberally to effectuate this purpose. *United States v. Avanti Constructors, Inc.*, 750 F.2d 759, 761 (9th Cir.1984) (citations omitted). The elements of a Miller Act claim are: 1) the plaintiff supplied materials in prosecution of the work provided for in the contract; 2) the plaintiff has not been paid; 3) the plaintiff had a good faith belief that the materials were intended for the specified work; and 4) the plaintiff meets the jurisdictional requisites of timely notice and filing under 40 U.S.C. § 270b(a). *Id.*

International asserts that Erb cannot make out a prima facie case under the Miller Act because it cannot prove that it supplied materials in prosecution of the work provided for in the contract. Erb argues that it is required to show only that the materials were provided with the good faith belief that they were intended for the work specified in the contract. Because it is not even clear that Erb could link its materials to a specific contract, its argument fails.

The undisputed facts show that Gregory opened two separate accounts with Erb, one for Capehart housing and one for anything else at Selfridge. The record also shows that Gregory had more than two jobs in process at Selfridge during the relevant period. Because the work performed pursuant to contract DAH–A20–86–C–6058 had been certified as complete by September 17, 1987, it is likely that the materials supplied by Erb were used on a different job. The only portion of the record buttressing Erb's argument is the unsupported statement in its papers that "[t]he documents previously produced ... evidence that prior to shipping the material, Erb required Gregory Industries to supply a copy of the payment bond." Plaintiff's Answer to Motion for Summary Judgment at 9.

Nevertheless, Erb's response is insufficient to withstand International's motion for summary judgment on Count II.

Rule 56(c) places the burden on the movant to show that there is an absence of evidence to support the opposing party's case. *Street v. J.C. Bradford & Company,* 886 F.2d 1472, 1479 (6th Cir.1989). Once the moving party has met its burden under Rule 56(c), its opponent may not rest on its pleadings but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Even if the materials were supplied in good faith to Gregory, there is nothing in the record showing that the materials were provided in prosecution of the work provided for in the contract. Indeed, given that the contract work was certified as complete prior to any delivery of materials by Erb, it is impossible for any of the materials to have been provided in prosecution of the contract work. Despite Erb's urging to the contrary, all of the requirements delineated in *Avanti* must be met before a Miller Act claim can be proven. Good faith delivery is not a substitute for supplying materials in prosecution of work provided for in the contract.

■ A brief discussion of the cases relied on by Erb illustrates the difference. In *Carlson v. Continental Casualty Co.,* 414 F.2d 431, 433 (5th Cir.1981), the Court of Appeals for the Fifth Circuit stated that "[i]t is immaterial to his right of recovery that the materialman deliver the materials to the jobsite or that such materials actually be used in the prosecution of the work." However, in that case, there was no evidence that the materials provided had been diverted to another job. *Id.* at 435. In *Color Craft Corp. v. Dickstein,* 157 F.Supp. 126, 132 (E.D.N.C.1957), the district court stated that "[n]either delivery of the material to the prime contract job site nor actual incorporation of the material is required [for recovery under the Miller Act]," but, in that case, the evidence showed that the materials provided were actually incorporated into the contract work. *Id.* Finally, in *Avanti,* it was undisputed that all goods supplied were eventually used in the project. 750 F.2d at 761. The Court is satisfied that the following rule is consistent with these decisions: a supplier's good faith belief that the materials were intended for the specified work is enough to carry the day when the materials are provided for contract work that has not been certified as complete. Based on this rule, Erb's Miller Act claim must be DISMISSED.

SO ORDERED.