The UNITED STATES for the Use and Benefit of DRAGONE BROS. INC., Plaintiff,

v.

MONIAROS CONTRACTING CORPORATION, Cardon Brick Corporation, Seaboard Surety Company and St. Paul Fire and Marine Insurance Company, Defendants.

No. 93 CV 5120 (SJ).

United States District Court, E.D. New York.

March 31, 1995.

Joseph J. Ferrara, Flushing, NY, for plaintiff.

Larry Hollander, Hollander and Associates, P.C., New York City, for defendants Moniaros Contracting Corp., Seaboard Surety Co. and St. Paul Fire and Marine Ins. Co.

Burton, Scott and Associates, P.C., Melville, NY, for defendant Cardon Brick Corp.

## MEMORANDUM AND ORDER

JOHNSON, District Judge:

### Introduction

This case involves a claim under 40 U.S.C. § 270 (the "Miller Act" or the "Act"), arising out of the construction of the Metropolitan Detention Center, Brooklyn, New York. Plaintiff, a supplier of building materials to

Defendants, has brought suit pursuant to the Miller Act to recover damages for the manufacture and storage of rebar blocks used in the construction of that project. Before this Court is Defendants' motion for dismissal of the complaint on the ground that the complaint fails to state a cause of action upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants further allege that the complaint is time-barred pursuant to 40 U.S.C. § 270b. Defendants also seek an award of attorney's fees and costs pursuant to Rule 11 of the Federal Rules of Civil Procedure. For the reasons stated below, Defendants' motion is denied in its entirety.

### Background

Defendant Moniaros Contracting Corporation ("Moniaros"), a prime contractor, entered into a written contract with the United States of America, acting by and through the Federal Bureau of Prisons, for the construction of a project known as the Metropolitan Detention Center, Brooklyn, New York. Pursuant to 40 U.S.C. § 270a, Moniaros, along with Defendant sureties Seaboard Surety Company ("Seaboard") and St. Paul Fire and Marine Insurance Company ("St. Paul"), executed and delivered to the United States a payment bond for the protection of persons supplying labor and materials to the project. Defendant Cardon Brick Corporation ("Cardon"), in its capacity as a subcontractor of Moniaros, engaged Dragone Bros. Inc. ("Plaintiff" or "Dragone") to supply materials necessary for the completion of the project. During the period of March 16, 1992 to November 5, 1993, Dragone supplied specially manufactured rebar blocks, concrete blocks, masonry mix sand, mortar cement and other building materials to the Metropolitan Detention Center project.

Plaintiff submitted its first invoice to Cardon at the end of March 1992. Plaintiff's terms of sale established that payment was due for those materials on or before April 30, 1992 (i.e., within 30 days of the end of the billing period). Plaintiff did not receive payment for this invoice until May 20, 1992. Plaintiff contacted Defendant, Moniaros, during the period of time in which payment was delinquent in order to arrange satisfaction of the invoice. Conversations with Moniaros's financial comptroller led to an oral agreement in which Moniaros, in its role as prime contractor, agreed to assume responsibility for the timely payment of all invoices submitted by Plaintiff. Accordingly, as of April 30, 1992, Plaintiff sent copies of all invoices to both Moniaros and Cardon. All terms of sale remained the same. In spite of this agreement, Plaintiff did not receive payment of the April invoice until August 6, 1992, sixty-seven days after payment was due.

Plaintiff notified Moniaros via telephone of the unacceptable nature of these payments. Moniaros accepted responsibility for the late payments and informed Plaintiff that payment was delinquent because the United States had not paid Moniaros in a timely fashion. To alleviate the problem, Moniaros requested that Plaintiff alter its billing system so as to provide invoices on the twentieth day of each month. Moniaros requested this change so that it could include Plaintiff's invoices in its monthly requisition forms to the United States government. Despite Plaintiff's compliance with this request, Plaintiff's invoice of June 20, 1992 was not paid until September 4, 1992. Subsequent invoices were similarly delinquent, a portion of which has not been paid.

Plaintiff commenced this action on November 12, 1993 to recover judgment for materials and labor provided to the Metropolitan Detention Center project, interest due on moneys owed on this project, as well as storage charges related to materials manufactured specifically for this project.

Defendants move for dismissal of the complaint on two separate grounds. First, Defendants allege that Plaintiff has failed to state a cause of action upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Second, Defendants claim that pursuant to 40 U.S.C. § 270b(b), Plaintiff has failed to commence this action in a timely manner. Specifically, Defendants argue that Plaintiff failed to comply with the jurisdictional prerequisites of the Miller Act since the action was not commenced within one year of the last date

materials were furnished to the project pursuant to the contract.

## Discussion

### A. Dismissal Pursuant to Rule 12(b)(6)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Green v. Maraio,* 722 F.2d 1013, 1015–16 (2d Cir.1983) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). The court must accept as true all material facts well-pleaded in the complaint and must make all reasonable inferences in the light most favorable to the plaintiff. *In re Energy Sys. Equip. Leasing Sec. Litig.,* 642 F.Supp. 718, 723 (E.D.N.Y. 1986).

Section 2(a) of the Miller Act, as set forth in 40 U.S.C. § 270b(a) provides in pertinent part:

> Every person who has furnished labor or material in the prosecution of the work provided in [the] prime contract ... shall have the right to sue on [the] payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit. ...

40 U.S.C. § 270b(a). Hence, material suppliers can recover from a prime contractor provided that they furnish the materials in the prosecution of work provided in the prime contract. *United States for the use of Color Craft Corp. v. Louis Dickstein,* 157 F.Supp. 126 (E.D.N.C.1957).

In the instant case, it is undisputed that Plaintiff, a material supplier, provided rebar blocks to the Metropolitan Detention Center project on which Defendant Moniaros was the prime contractor. The Miller Act was designed and enacted to provide a remedy for unpaid "persons supplying labor and materials in the prosecution of the work provided for" on federal projects. *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 122, 94 S.Ct. 2157, 2161, 40 L.Ed.2d 703 (1974). It is likewise undisputed that the rebar blocks were manufactured for

use in this federal project by Plaintiff. The record indicates that the rebar blocks were manufactured in accordance with the specifications of the Federal Bureau of Prisons at the request and instance of Defendants. The sole purpose of manufacturing the rebar blocks was to use them in the construction of the Metropolitan Detention Center. Thus, the issue before this Court is whether "rebar blocks" are covered by the Miller Act.

Defendants state that they do not contest the issue of whether or not the rebar blocks could be the subject of a Miller Act claim. Yet that is exactly the crux of this Rule 12(b)(6) motion. In order to be the subject of a Miller Act claim, the rebar blocks must be either "materials" or "labor" as contemplated by the statute. Courts have held various items to be materials as contemplated by the Miller Act, including paint, steel, and lumber. *See, e.g., United States ex rel. Purity Paint Products Corp. v. Aetna Casualty & Surety Co.,* 56 F.Supp. 431 (D.Conn.1944); *United States for the use and benefit of Krupp Steel Products v. Aetna Insurance Co.,* 831 F.2d 978 (11th Cir.1987); *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). This Court sees no reason why rebar blocks would not be "materials" within the meaning of the Miller Act. Consistent with this finding and with this Court's finding with respect to the one year limitation period under the Act, this Court holds that Plaintiff has made out a prima facie case under the Miller Act. Accordingly, Defendants' motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is denied.

### B. Motion to dismiss for failure to comply with 40 U.S.C. § 270b

Defendants' second ground for dismissal of this Complaint is based on 40 U.S.C. § 270b. Defendants argue that in order to maintain a cause of action under the Miller Act, a plaintiff must comply with all conditions precedent required by the statute. A material supplier must show that (1) he has supplied materials in prosecution of the work provided for in the prime contract; (2) he has not been paid therefore; (3) he be-

lieved in good faith that the materials were intended for the specified work; and (4) he has complied with the jurisdictional prerequisites to bringing the action. *United States for the use and benefit of William Carlson v. Continental Casualty Co.*, 414 F.2d 431 (5th Cir.1969); *United States for the use and benefit of Krupp Steel Products v. Aetna Insurance Co.*, 831 F.2d 978 (11th Cir.1987); *United States for the use and benefit of Lanahan Lumber Co. v. Spearin, Preston & Burrows Inc.*, 496 F.Supp. 816 (M.D.Fla. 1980).

Defendants do not contest Plaintiff's satisfaction of the first three conditions precedent; instead, their motion alleges that Plaintiff failed to comply with the jurisdictional prerequisite of filing the Complaint within "one year after the date on which the last of labor was performed or material was supplied by him," i.e., the last date of furnishing of materials to the project. 40 U.S.C. § 270b(b). Defendants assert that November 5, 1992 was the last date on which materials were furnished to the project. They point to various circumstances in support of this assertion. First, in several letters to the Defendants, Plaintiff by and through its attorney point to November 5, 1992 as the last date on which materials were supplied pursuant to the contract. Second, Defendants contend that Plaintiff's own statement of account sets the last date of delivery as November 5, 1992. Third, Defendants argue that Plaintiff's self-described "invoice" established November 5, 1992 as the last date on which Plaintiff deemed itself to have provided materials to the project. Defendants thus argue that November 5, 1992 is the controlling date in determining when the one-year period for commencing the action begins to run. Since this action was commenced on November 12, 1993, Defendants maintain that it is time-barred pursuant to section 270b(b) of the Miller Act.

Plaintiff does not dispute that November 5, 1992 was the last date of actual physical delivery of materials to the jobsite. Plaintiff argues, however, that actual delivery of materials is not essential to a right of recovery

under the Act. Plaintiff contends that notification that the balance of the specially manufactured rebar blocks were available and tender of delivery constituted "furnishing" within the meaning of the Miller Act. Plaintiff points to several dates ranging from November 15, 1992 to January 1993 as dates on which materials were "furnished" to Defendants, thus rendering this action timely:

> November 15, 1992—Cardon is billed for the rebar blocks (Dragone Aff. ¶¶ 35–38);
>
> Second week of December 1992—Plaintiff attends meeting at jobsite and Moniaros assures Plaintiff that someone would contact him to arrange delivery of the remaining rebar blocks; Moniaros assures Plaintiff that Plaintiff would not be hurt by any change in contractors (Dragone Aff. ¶¶ 43–46);
>
> January 7, 1993—Date of letter from Defendant Moniaros's attorney stating, "I am discussing with Tratoros [1] their contacting you to purchase these goods directly." (Dragone Aff. ¶ 49 at 15), (Ferrara Aff. ¶ 15 at 5);
>
> January 1993—Tender of delivery to Terranova, masonry contractor for Tratoros (Dragone Aff. ¶¶ 50–52 at 15).

Plaintiff argues that it is sufficient that it tendered delivery of the rebar blocks in good faith to all potentially responsible parties with the reasonable expectation that the goods would be used in the completion of the Metropolitan Detention Center project. Under this rationale, the last date of actual delivery is not controlling in determining the applicability of the Miller Act as the statute offers relief to those "furnishing" or "supplying" materials to public projects. This Court agrees.

Material suppliers have been found to have a cause of action against the prime contractor of a project provided that the suppliers delivered materials to subcontractors in good faith and under the reasonable expectation that the goods were intended for ultimate use under the prime contract. *United States for the use and benefit of I. Burack Inc. v. Sovereign Construction Co.*

---

1. Tratoros Construction, Inc. was the construction company hired to complete the project by Defendant sureties after Moniaros was terminated.

*Ltd.*, 338 F.Supp. 657 (S.D.N.Y.1972); *United States for the use and benefit of William Carlson v. Continental Casualty Co.*, 414 F.2d 431 (5th Cir.1969); *United States for the use of Color Craft Corp. v. Louis Dickstein, et al.*, 157 F.Supp. 126 (E.D.N.C.1957).

■ In the instant case, Plaintiff's good faith belief that the materials were to be used in the Metropolitan Detention Center Project is undisputed. That belief is amply demonstrated by the fact that rebar blocks were specially manufactured to meet the mandates of the Federal Bureau of Prisons and were in fact so used. As long as there is good faith, actual delivery to the jobsite or even incorporation in the work is immaterial to the right of recovery under the Miller Act. *Lanahan Lumber Co.*, 496 F.Supp. at 817 (M.D.Fla.1980); *Ibex Industries v. Coast Line Waterproofing, et. al.*, 563 F.Supp. 1142 (D.C.1983); *Krupp Steel Products*, 831 F.2d at 980.

The inquiry here is the meaning of "furnishing" under the Miller Act. In deciding the issue, this Court is influenced by the persuasive authority of a Florida case decided on similar facts. In *United States for the use and benefit of Lanahan Lumber Co. v. Spearin, Preston & Burrows, Inc.*, 496 F.Supp. 816 (M.D.Fla.1980), the plaintiff brought a Miller Act claim against the prime contractor on a governmental construction project. A subcontractor engaged plaintiff to provide specially treated lumber for the construction of the Fort Clinch Fishing Pier Recreation. The plaintiff alleged that it had performed all labor and made all materials available to the subcontractor only to have the goods wrongfully rejected.

The defendants in *Lanahan* moved for dismissal of the action arguing that the complaint presented no facts that show that labor or materials were supplied in prosecution of the federal contract. The district court denied defendant's motion to dismiss, rejecting any suggestion that a tender of goods and wrongful rejection was insufficient to state a valid Miller Act claim. *Id.* at 818. The court held that "plaintiff's alleged notification to defendant Engineers that the lumber was ready, and defendants alleged rejection thereof, states a claim that labor and materials were 'furnished or supplied' within the terms of the Miller Act." *Id.*

■ In the case presented here, Plaintiff was engaged by a subcontractor of the prime contractor to provide specially manufactured rebar blocks for the construction of a federal prison. Plaintiff notified Defendants that the blocks were ready and available for delivery in December 1992. Defendants did not wrongfully reject delivery of the goods as in *Lanahan,* but instead accepted the blocks and made arrangements for their delivery. Defendants' attorney later wrote to Plaintiff stating, "I am discussing with [our new subcontractor] their contacting you to purchase the goods directly." (Dragone Aff. ¶ 49 at 15; Ferrara Aff. ¶ 15 at 5). These facts taken together show that Plaintiff made an offer of performance to Defendants which Defendants accepted subsequent to November 5, 1992. Just as tender and wrongful rejection were sufficient to constitute furnishing in *Lanahan,* tender and subsequent acceptance in this case must be "furnishing" within the meaning of the Miller Act.

■ This interpretation of "furnishing" is consistent with Congressional intent and the Act's legislative history. A highly remedial statute, the Miller Act should be liberally interpreted to effect the Congressional intent of protecting those who supply materials or labor to federal projects. *J.W. Bateson Co. v. United States ex rel. Board of Trustees*, 434 U.S. 586, 594, 98 S.Ct. 873, 877, 55 L.Ed.2d 50 (1978). Enacted in 1935, the Miller Act was a response to the unavailability of mechanics' liens to those providing services or materials for the construction of buildings or works for the federal government.[2] Consistent with the substantive pro-

2. Civil law provides for mechanics' liens in favor of persons who have performed work or have furnished materials for private construction projects. *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 122, 94 S.Ct. 2157, 2161, 40 L.Ed.2d 703 (1974). Such liens provide a protective device which assures payment of amounts due workmen and material suppliers. They are not available to those providing services or materials for the construction of public projects because a lien cannot attach to

tections afforded by its predecessor, the Heard Act of 1905, the Miller Act was designed to strengthen the existing rights of laborers on public works by shortening the period within which action may be instituted by them against a surety. H.R.REP. No. 1263, 74th Cong., 1st Sess., 1–2 (1935); S.REP. No. 1238, 74th Cong., 1st Sess., 1 (1935). In keeping with the Act's purpose and its broad remedial scope, this Court finds that Plaintiff's tender of delivery to Defendants in December 1992 and January 1993 are sufficient to constitute furnishing under the Miller Act. Accordingly, Plaintiff's claim is not time-barred and the motion is denied.

## C. EQUITABLE ESTOPPEL

Plaintiff argues that the doctrine of equitable estoppel precludes Defendants from raising the statute of limitations under section 270b(b) of the Miller Act as a defense to this action. Since this Court finds that Plaintiff commenced its action in a timely manner, this Court need not entertain the issue of equitable estoppel.

## D. RULE 11 SANCTIONS

Defendants also move this Court to impose sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Defendants maintain that the Miller Act cause of action is meritless (Defs.' Mem. at 10), and that Plaintiff's argument regarding equitable estoppel and Plaintiff's accusations of bad faith on the part of Defendants are "baseless and reprehensible." (Defs.' Rep.Mem. at 15).

Rule 11 requires attorneys to conduct a reasonable inquiry into the viability of a position before endorsing it. *O'Malley v. New York City Transit Authority*, 896 F.2d 704 (2d Cir.1990). A Rule 11 violation is triggered "*where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 245 (2d Cir.1985), *cert.* government property. *Id.* at 121–22, 94 S.Ct. at

*denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987) (emphasis in original).

In the instant case, since this Court finds that Plaintiff's Miller Act cause of action is viable on the law, this claim cannot be the basis for awarding sanctions under Rule 11. Similarly, Defendants offer very little in support of their conclusory statements regarding the conduct and claims of Plaintiff. As this Court finds that Plaintiff's claims have not transcended the bounds of conduct acceptable under Rule 11, Defendants' motion for sanctions is denied.

### *Conclusion*

For the reasons stated herein, Defendants' motion for dismissal of the complaint is DENIED in its entirety. Defendants' motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure is also DENIED.

SO ORDERED.